**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Melvin LOVEJOY, Defendant and Appellant.**

**Cr. No. 900183.**

Supreme Court of North Dakota.

Dec. 17, 1990.

---

Michael Ray Hoffman, Bismarck, for defendant and appellant.

Bruce B. Haskell, Asst. State's Atty., Bismarck, for plaintiff and appellee.

VANDE WALLE, Justice.

Melvin Lovejoy appealed a judgment of conviction entered in district court following a jury verdict finding him guilty of theft of property, a class C felony. We affirm the conviction.

On October 8, 1987, Lovejoy entered into an agreement with a Curtis Mathes retail outlet in Bismarck to lease stereo equipment. Under the terms of the lease, Lovejoy agreed to pay $32.93 at the commencement of the lease, and $32.93 each month for seventeen months thereafter. The lease contained an option for early termination and an option to purchase. Lovejoy made the initial payment on October 8, 1987, and timely made his second payment on November 6, 1987. Lovejoy made no other payments to Curtis Mathes.

On December 12, 1987, Lovejoy transported the stereo from his residence in Bismarck to Jay's Pawn Shop which is located in Mandan. Lovejoy pledged the stereo equipment as security for a $75.00 loan from Jay's Pawn Shop. Under the terms of the pawn agreement, Lovejoy had thirty days to repay the loan, with interest, in order to redeem the equipment. Lovejoy failed to repay the loan and the stereo equipment was sold by the pawnshop.

Lovejoy was arrested and charged with theft of property in violation of section 12.1–23–02, NDCC. The State charged that the value of the property exceeded $500, thus making the offense a class C felony pursuant to section 12.1–23–05, NDCC.

Lovejoy raises two issues on appeal: first, whether the evidence was sufficient to show that the property exceeded five hundred dollars in value; second, whether the evidence was sufficient to show that Lovejoy acted with the intent to deprive the owner of the property.

The standard of review we employ in cases challenging the sufficiency of evidence to sustain a conviction is well established. In all such cases "we look only to the evidence most favorable to the verdict and the reasonable inferences therefrom to see if there is substantial evidence to war-

rant a conviction." *State v. Manke*, 328 N.W.2d 799, 805 (N.D.1982). The tasks of weighing the evidence and judging the credibility of witnesses belong exclusively to the jury, not to this Court. *State v. Manke, supra.* On appeal, this Court must assume that the jury believed the evidence which supports the verdict and disbelieved any contrary evidence. *State v. Manke, supra.*

■ Lovejoy's first contention is that the evidence was insufficient to show that the value of the property exceeded five hundred dollars. We disagree.

The jury was instructed that one essential element of the crime of theft of property was that the value of the transferred property exceeded five hundred dollars. Conflicting evidence was presented as to the value of the stereo. When presented with conflicting evidence as to the value of stolen goods, section 12.1–23–05(6), NDCC, provides the following instruction:

> "For purposes of grading, the amount involved in a theft under this chapter shall be the highest value by any reasonable standard, regardless of the actor's knowledge of such value, of the property or services which were stolen by the actor, or which the actor believed that he was stealing, or which the actor could reasonably have anticipated to have been the property or services involved...."

Lovejoy argues that the value of the stereo given to the jury should have been excluded on hearsay grounds. David Boehm, who, at the time of trial, managed the Bismarck Curtis Mathes retail outlet, testified that the retail value of the stereo was $545.95. Boehm obtained this figure from the Curtis Mathes retail outlet in Minot, which manages the administrative functions for the Bismarck outlet. Boehm added sales tax to the retail figure and subtracted Lovejoy's two payments to arrive at a value of $508.08. Lovejoy argues that because this figure is based on hearsay, there is no value of the stereo properly in evidence and thus there was insufficient evidence to prove that the value of the property exceeded five hundred dollars.

Lovejoy fails to acknowledge, however, that the jury heard several possible values for the stereo equipment. The lease agreement, received into evidence without objection, provided at least four reasonable values for the stereo. The lease agreement revealed that the total of the monthly payments under the lease equals $592.74; that the cost to exercise the option to purchase the stereo after making all lease payments would be $197.58, for a total cost of $790.32; that the cost to purchase the stereo after making one payment of $32.93 would be $549.61 for a total of $582.54; and that the cost to purchase the stereo after making three payments of $32.93 would be $501.77, for a total of $600.56.

Even though Lovejoy realized only $75.00 as a result of pawning the stereo, the jury could properly consider one of the values listed on the lease agreement. The rationale of section 12.1–23–05(6) is that the highest reasonable value is to be used and that the reasonableness of valuation is to be measured against any standard that is fair under the circumstances. II Working Papers of the National Commission on Reform of Federal Criminal Laws, at 954.[1] In cases where the actor never realizes the full worth of the stolen property, it is "appropriate to measure his culpability by the value of the interest invaded." *Id.* In this case, Curtis Mathes had an interest in the monthly payments under the lease agreement plus the value of the stereo upon expiration of the lease agreement. Lovejoy invaded that interest and the lease agreement provided the jury with sufficient evidence to determine that the value of the stereo exceeded five hundred dollars.

Lovejoy's second contention is that the evidence was insufficient to show that he

---

1. The language of section 12.1–23–05(6), NDCC, is identical to the language used in § 1735(7) of the proposed Federal Criminal Code. *See U.S. National Commission on Reform of Federal Laws, A Proposed New Federal Criminal Code* § 1735 (1971). The Commentary of the draftsmen of the proposed Federal Criminal Code is useful as an aid in interpreting North Dakota statutory provisions modeled on the proposed Federal Criminal Code. *State v. Pfister*, 264 N.W.2d 694 (N.D.1978).

acted with the intent to deprive the owner of the property. The jury was provided the following instruction on intent:

> "*INTENT:* The intent or purpose with which an act is done is a mental process and as such generally remains hidden in the mind where it is conceived, and is rarely, if ever, susceptible of proof by direct evidence. Intent may be inferred from the outward manifestations, by the words or acts of the party entertaining it, and the facts and circumstances surrounding or attending upon the acts sought to be proved."

 Circumstantial evidence may often be the only method of proving criminal intent. *State v. Huwe,* 413 N.W.2d 350 (N.D.1987). When reviewing a verdict based on circumstantial evidence, our role is to review the record "to determine if there is competent evidence to allow the jury to draw an inference reasonably tending to prove guilt and fairly warranting a conviction." *State v. Raywalt,* 436 N.W.2d 234, 237 (N.D.1989). The defendant's conduct both before and after the offense may be considered as circumstantial evidence of the requisite criminal intent. *State v. Merrill,* 428 N.W.2d 361 (Minn.1988); *see State v. Huwe, supra* (the fact that defendant filed for bankruptcy shortly after he had exceeded the limit on a credit card by more than six thousand dollars was admissible as circumstantial evidence of his intent to deprive a credit union of its property).

 There was competent evidence to allow the jury to reasonably find that Lovejoy intended to deprive Curtis Mathes of the property. Lovejoy had agreed to certain conditions when he signed the lease. Among these conditions were that: Curtis Mathes retained ownership of the leased property and title thereto; Lovejoy would keep and use the property only at his home address as listed on the lease agreement; and Lovejoy had no right to transfer or in any way encumber the leased property. Lovejoy pawned the property approximately two months after the commencement of the lease at a time when his investment in the property was still quite small. Lovejoy testified that he knew he had thirty days to redeem the pawned property, and that he knew the property would be sold if he did not redeem it. Lovejoy further testified that, at one point during the thirty-day redemption period, he had the money to redeem the pawn but was living in Fort Yates and could not find a ride to Bismarck. Although he had the money to redeem the pawn, Lovejoy apparently made no effort to contact the pawnshop by telephone or by mail.

Lovejoy asserts that there was evidence to show that he did not intend to deprive Curtis Mathes of the property. First, Lovejoy testified he did not intend to deprive the owner of the property but, rather, that he intended to pawn the property to obtain money to pay some bills. Lovejoy's alleged motives for pawning the property, however, are not exculpatory and do not directly address the existence of criminal intent. Second, Lovejoy acknowledged a debt to Curtis Mathes in his subsequent divorce proceedings. However, Lovejoy never made an effort to contact Curtis Mathes to arrange payment on the debt. The jury may have considered Lovejoy's actions in listing the debt as a tactical decision in the divorce action rather than as evidence of his intention in pawning the property. Finally, Lovejoy argues that when he pawned the property he gave his correct name and address. While the jury could have weighed this evidence in Lovejoy's favor, we will not substitute our judgment for that of the jury. *State v. Raywalt, supra.*

For reasons stated herein, the judgment of conviction is affirmed.

ERICKSTAD, C.J., and LEVINE, MESCHKE and GIERKE, JJ., concur.