STATE of North Dakota, Plaintiff
and Appellee,

v.

Randolph NODLAND, Defendant
and Appellant.

Cr. No. 920036.

Supreme Court of North Dakota.

Dec. 14, 1992.

Allen M. Koppy (argued), State's Atty., Mandan, for plaintiff and appellee.

Nodland & Dickson, Bismarck, for defendant and appellant; argued by Thomas A. Dickson, Bismarck.

JOHNSON, Justice.

Randolph Nodland appeals from a county court criminal judgment and jury verdict finding him guilty of driving a motor vehicle with a blood alcohol concentration of .10 percent or greater. We conclude that the trial court abused its discretion in denying Nodland's motion for a continuance, and we reverse and remand for a new trial.

On April 27, 1991, Duane Armstrong, North Dakota Highway Patrol, arrested Nodland for driving with a blood alcohol concentration of at least .10 percent and driving while under the influence of intoxicating liquor, in violation of § 39–08–01, N.D.C.C.[1] Debra Held, R.N., withdrew a

1. Section 39–08–01, N.D.C.C., provides in part:
   "1. A person may not drive or be in actual physical control of any vehicle upon a highway or upon public or private areas to which the public has a right of access for vehicular use in this state if any of the following apply:
   "a. That person has a blood alcohol concentration of at least ten one-hundredths of one percent by weight at the time of the

blood specimen from Nodland. The specimen was sent to the Office of the State Toxicologist, where it was tested by chemist Rick Wanderi. The resulting analytical report indicated that Nodland had a blood alcohol concentration of .18 percent.

Nodland requested a list of witnesses the government intended to call at the trial, and "[a] listing and summary of all exhibits intended to be introduced at trial." Rule 16, N.D.R.Crim.P. The prosecutor responded by listing Armstrong, Held, and Wanderi as government witnesses and by submitting the following: "North Dakota Highway Patrol Citation No. 2266386 (1 page), Case Summary (7 pages), Report & Notice Form (1 page), Analytical Report (2 pages), and North Dakota Drivers Abstract (2 pages)."

The State presented its case through just one witness—Armstrong. Near the end of the State's case, the prosecutor offered Exhibit 2, which was the analytical report of the result of Nodland's blood test. The trial court ruled the exhibit inadmissible, explaining: "you haven't proven that they followed the directions. You don't have any directions into evidence, we don't know what directions you're referring to." When the prosecutor argued that it should not be necessary "to call the State Toxicologist for every jury trial," the trial court said: "All he'd have to do is get those nine steps filed with the Clerk of Court's office just like you do with the approved method." [2] After the prosecutor made an offer of proof that Exhibit 2 indicated a blood alcohol concentration of .18 percent, the court recessed the trial at noon.

During the noon recess, the prosecutor had the State Toxicologist transmit to him a facsimile document certifying that "Form 104 (4–88) hereto attached" is "a true and correct copy" of the "original as the same appears of record on file in my office." The prosecutor offered it as Exhibit 9, "to show that these nine steps were promulgated by the State Toxicologist." Nodland's attorney made a number of objections, including:

"You know, we—it wasn't disclosed to us in our discovery request. I checked this morning before I went to trial to see if there were any last minute additions at the Clerk's office. There were not. This is not a certified copy.

"It's very unfair of them to come in and create this new evidence right before we begin to start our case. It really is a little late, Your Honor, halfway through their case to come up with new evidence.

\* \* \* \* \* \*

"... the document in the form of a certified copy of a public record was not disclosed."

The trial court was "satisfied that this document is what it purports to be" and received Exhibit 9 in evidence.

After the trial court ruled that Exhibit 9 would be received in evidence, Nodland's counsel moved for a continuance, arguing: "This is so unfair to have us rebut something that wasn't created until at the end of the trial." The prosecutor argued: "The only thing that was created today is the certification. The contents of the document have been known to the defense for a long time." Nodland's counsel responded:

"[I]t is unfair because now they can put the blood test in without putting on the witness stand who did it or the witness who wrote the direction.

\* \* \* \* \* \*

performance of a chemical test within two hours after the driving.

"b. That person is under the influence of intoxicating liquor."

2. The trial court was referring to Form 104, issued by the State Toxicologist. The State Toxicologist drafted Form 104 in light of the statutory scheme contained in § 39–20–07, N.D.C.C. *State v. Schwalk,* 430 N.W.2d 317 (N.D.1988). The form contains a nine-step process for drawing blood samples and submitting them for testing. Counsel has informed us that prior to this trial, the State Toxicologist had not filed Form 104 with the clerks of the district courts as authorized by § 39–20–07, N.D.C.C. When the State Toxicologist has so filed an approved method, § 39–20–07(5), N.D.C.C., provides: "The results of the chemical analysis must be received in evidence when it is shown that the sample was properly obtained and the test was fairly administered, and if the test is shown to have been performed according to methods and with devices approved by the state toxicologist."

" ... if they had disclosed that evidence like the Rule 16 motion requested them to do, we would have subpoenaed Rick Wanderi."

The prosecutor responded that under § 39–20–07(9), N.D.C.C., a defendant may subpoena the testing chemist in every case.

The trial court denied Nodland's motion for a continuance. Armstrong testified that the nine-step process followed in the withdrawal and submission of Nodland's blood sample .for testing was the same as the nine-step process contained in the Form 104 certified by the State Toxicologist in Exhibit 9. The analytical report of the result of Nodland's blood test was then admitted into evidence. The jury found Nodland guilty of driving a motor vehicle with a blood alcohol concentration of .10 percent or greater. A criminal judgment of conviction was filed and Nodland appealed.

■ Although Nodland has raised a number of issues on appeal, the dispositive issue is whether or not the trial court abused its discretion in denying Nodland's motion for a continuance. We conclude that the trial court did abuse its discretion in denying the motion.

"Ordinarily, the trial court's decision to grant or deny a motion for continuance will not be set aside on appeal absent an abuse of discretion." *State v. Kunkel*, 452 N.W.2d 337, 339 (N.D.1990). When we review a trial court's decision on a motion for a continuance, we "must look to the particular facts and circumstances of each case as there is no mechanical test for determining whether or not a trial court abused its discretion." *Id.*

*State v. Lince*, 490 N.W.2d 476 (N.D. 1992), involved an appeal from a judgment of conviction for driving while under the influence of alcohol. Immediately preceding the trial, the state's attorney said he intended to call six witnesses. He had only disclosed one in response to the defendant's discovery request under Rule 16(f)(1), N.D.R.Crim.P. The defendant's attorney objected. The trial court allowed the witnesses to testify and denied the defendant's request for a continuance. On ap-peal, we found that the defendant was prejudiced because he did not have an adequate opportunity to prepare for cross-examination of the undisclosed witnesses and because he did not have an opportunity to obtain an expert witness to rebut the State's expert witness testimony. We reversed the conviction and remanded for a new trial, concluding that the trial court abused its discretion in denying the defendant any relief for the State's failure to disclose its intended witnesses in response to the defendant's discovery request.

■ Section 39–20–07, N.D.C.C., eases the requirements for admissibility of chemical test results while ensuring that the tests upon which the results are based are fairly administered. *State v. Schwalk*, 430 N.W.2d 317 (N.D.1988). If the State Toxicologist has filed with the clerks of the district courts approved methods and devices for sampling and testing a defendant's blood, breath, saliva, or urine in accordance with § 39–20–07, N.D.C.C., "[t]he results of the chemical analysis must be received in evidence when it is shown that the sample was properly obtained and the test was fairly administered, and if the test is shown to have been performed according to methods and with devices approved by the state toxicologist." Section 39–20–07(5), N.D.C.C. A certified copy of blood test results is admissible if fair administration of the test is established. *State v. Schwalk, supra.* Fair administration can be established by proof that methods and procedures established by the State Toxicologist were scrupulously complied with, or by expert testimony. *Id.* The defendant in any criminal proceeding may subpoena the person who conducted the chemical analysis. Section 39–20–07(9), N.D.C.C. The legislature has struck a "balance between the all-but-automatic admissibility of chemical test results, on the one hand, and the defendant's right to cross-examine the chemical analyst, on the other hand." *State v. Ganje*, 481 N.W.2d 227, 229 (N.D.1992).

Nodland's attorney in this case had recently defended a driver in another driving under the influence trial in the same court.

The trial court ruled in that case that the blood test result was inadmissible because the State Toxicologist had not certified Form 104. In the days leading up to this trial, including the morning of trial, Nodland's counsel checked to see if the State Toxicologist had filed any new certified documents with the Clerk of the District Court. None had been filed. Those unique circumstances, coupled with the prosecutor's failure to disclose his intention to introduce Form 104 as an exhibit at trial, support the argument that Nodland's counsel had no reason to expect that the report of Nodland's blood test would be admitted at trial. Nodland had no reason to subpoena Wanderi, the chemist who analyzed Nodland's blood sample. The surprise admission of Form 104, after a mid-trial facsimile certification, created an unforeseen need for Nodland's counsel to have the opportunity to cross-examine the chemist who analyzed the blood sample in order to challenge the scientific reliability of the blood test. In light of the unique circumstances presented in this case, we conclude that the trial court abused its discretion in denying Nodland's motion for a continuance.

We need not address the other issues raised. "Questions, the answers to which are not necessary to the determination of a case, need not be considered." *Hospital Services, Inc. v. Brooks*, 229 N.W.2d 69, 71 (N.D.1975).

The verdict and judgment are reversed, and the matter is remanded for a new trial.

ERICKSTAD, C.J., and VANDE WALLE, MESCHKE and LEVINE, JJ., concur.