**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Terri ENSZ, Defendant and Appellant.**

**Cr. No. 920332.**

Supreme Court of North Dakota.

July 14, 1993.

Wayne D. Goter, Bismarck, for defendant and appellant.

Bruce B. Haskell, Asst. State's Atty., Bismarck, for plaintiff and appellee.

SANDSTROM, Justice.

Terri Ensz appeals from a judgment of conviction for class C felony theft of property. We affirm.

In September, 1991, Kevin Bender discovered that his downhill ski equipment, golf clubs, and water skis were missing from his storage locker located in the basement of his apartment building. Bender reported the missing items to the Bismarck Police Department, which instructed him to look for the equipment at local pawn shops. Bender subsequently located the downhill ski equipment [1] at Jay's Pawn Shop of Bismarck. Bender notified the police, who traced the ski equipment to Ensz through a pawn ticket bearing her name and address. Ensz was arrested and charged with theft of property having a value of $500 or more, a class C felony, under N.D.C.C. §§ 12.1–23–02 and 12.1–23–05(2) [2].

At a jury trial, Bender testified that he had paid $600 for the ski equipment five years ago, and that he had used the equipment once or twice a year since then. Jay Couture, owner of Jay's Pawn Shop, testified that he loaned Ensz $30 on the ski equipment. Couture stated that he normally loans 25 percent of the value of the item being pawned, but in this case, he would have given less. He testified he was sure he would have "gone awful low" because he hadn't had good luck selling pawned skis. Couture said the equipment was "very good," he was "not an expert in

---

1. Bender described the equipment as "Olin Mark IV downhill competition skis," "747 bindings," "Scott poles" and an "Olin ski bag."

2. N.D.C.C. § 12.1–23–02, states:
   "*Theft of property.* A person is guilty of theft if he:
   "1. Knowingly takes or exercises unauthorized control over, or makes an unauthorized transfer of an interest in, the property of another with intent to deprive the owner thereof;
   "2. Knowingly obtains the property of another by deception or by threat with intent to deprive the owner thereof, or intentionally deprives another of his property by deception or by threat; or
   "3. Knowingly receives, retains, or disposes of property of another which has been stolen, with intent to deprive the owner thereof."
   N.D.C.C. § 12.1–23–05(2), states:
   "*Grading of theft offenses.*
   "2. Theft under this chapter is a class C felony if:
      "a. The property or services stolen exceed five hundred dollars in value; . . ."

skis," and it was possible the equipment was worth more than $500. He stated "anything to do with sporting equipment is expensive." Couture also testified "they were really nice skis." The jury also saw photographs of the ski equipment.

At the close of the State's case, Ensz moved for acquittal under Rule 29, N.D.R.Crim.P., on the grounds that the State had failed to show the ski equipment's current value exceeded $500. The district court denied the motion, because value "is ultimately a factual determination by the jury." After presenting her defense, Ensz again moved for acquittal.[3] The district court denied the motion, and the jury found Ensz guilty of the felony charge. The district court sentenced Ensz to imprisonment in the Burleigh County Detention Center for ten months, with all but seven days of the sentence suspended. The district court also placed Ensz on probation for eighteen months.

Ensz appeals, arguing that (1) the trial court erred in refusing to grant her motion for acquittal, and (2) the evidence presented at trial is insufficient to sustain the guilty verdict. Since Ensz presented her defense after the district court denied her motion, we review the entire record under a sufficiency of the evidence standard. *See State v. Allen*, 237 N.W.2d 154, 159 (N.D. 1975); *State v. Schaeffer*, 450 N.W.2d 754, 756 (N.D.1990).

"To successfully challenge the sufficiency of the evidence on appeal, a defendant must convince us that the evidence, when viewed in the light most favorable to the verdict, permits no reasonable inference of guilt." *State v. Raulston*, 475 N.W.2d 127, 128 (N.D.1991). "A verdict for conviction 'rests upon insufficient evidence only when no rational fact finder could have found the defendant guilty beyond a reasonable doubt' after drawing all inferences in favor of the verdict and viewing all evidence in a light most favorable to the prosecution." *State v. Gefroh*, 495 N.W.2d 651, 655 (N.D. 1993), (quoting *State v. Schill*, 406 N.W.2d

660, at 660 (N.D.1987)). "The tasks of weighing the evidence and judging the credibility of witnesses belong exclusively to the jury, not to this Court." *State v. Lovejoy*, 464 N.W.2d 386, 388 (N.D.1990). We must assume that the jury believed the evidence supporting the verdict and did not believe contrary evidence. *Lovejoy* at 388.

To convict a defendant of theft of property under N.D.C.C. §§ 12.1–23–02 and 12.1–23–05(2), the State must prove by evidence beyond a reasonable doubt that the value of the property, by any reasonable standard, exceeds $500. *See State v. Garza*, 241 Neb. 256, 487 N.W.2d 551, 556 (1992).

Ensz contends the only reasonable standard for valuing the property is market value, and that there was no evidence showing that the value of the ski equipment exceeds $500 under that standard.

■ In 1973, North Dakota adopted a new criminal code to be effective July 1, 1975. N.D.Sess.Laws 1973, ch. 116. The new North Dakota code was based substantially on the proposed Federal Criminal Code. *See North Dakota Legislative Council, Minutes of the Committee on Judiciary "B"*, 1971–73 Interim; *A Hornbook to the North Dakota Criminal Code*, 50 N.D.L.Rev. 639 (1974). The consolidation of the "theft offenses" was described as "one of the most radical changes" in North Dakota law. *Minutes*, June 20–21, 1972, at 36. The former distinctions among "larceny, stealing, purloining, embezzlement, obtaining money or property by false pretenses, extortion, blackmail, fraudulent conversion, and receipt of stolen property" were eliminated. *Minutes* at 36.

N.D.C.C. § 12.1–23–05(6) was enacted to provide broad latitude for determining value:

"For purposes of grading, the amount involved in a theft under this chapter shall be *the highest value by any reasonable standard,* regardless of the actor's knowledge of such value, of the property or services which were stolen

---

**3.** Ensz testified that she pawned the ski equipment for her brother and did not know that it

was stolen.

by the actor, or which the actor believed that he was stealing, or which the actor could reasonably have anticipated to have been the property· or services involved...." (Emphasis added.)

"The idea is that the highest reasonable value shall be used (*compare* 18 U.S.C. § 641), measured against any standard that is fair under the circumstances." II *Working Papers of the National Commission on Reform of Federal Criminal Laws,* at 954 (1970).[4]

The theft valuation provision "is borrowed with slight modification, from the Model Penal Code." II *Working Papers* at 954.

"The purpose [of the Model Penal Code] is to put the transaction in a higher rather than a lower category where any one of several possible criteria of value justifies the higher classification." *Model Penal Code and Commentaries,* Vol. II, pt. II, Commentary to § 223.1, at 141 (1980). The commentary notes:

"A few of the recently drafted codes and proposals have followed the Model Code approach of expressly declining to specify a particular method of valuation. New Hampshire and North Dakota have adopted the Model Code language verbatim, as did the original revision in Pennsylvania."

*Model Penal Code and Commentaries,* Vol. II, pt. II, at 142 (footnotes omitted).

The commentary also notes: "The federal proposal follows the general approach of the Model Code, though different language is used in its implementation." That language is contained in its footnote 41:

"U.S. (p) S.1437, § 111 (1978) provides: '[v]alue,' when stated in monetary terms, means the aggregate value in terms of (a) face, par, or market value; (b) *original* or replacement cost; or (c) wholesale or retail price; whichever of the foregoing is greatest."

*Model Penal Code and Commentaries,* Vol. II, pt. II, at 142–43 (emphasis added).

"The rationale of section 12.1–23–05(6) is that the highest reasonable value is to be used and that the reasonableness of valuation is to be measured against any standard that is fair under the circumstances. II Working Papers of the National Commission on Reform of Federal Criminal Laws, at 954. In cases where the actor never realizes the full worth of the stolen property, it is 'appropriate to measure his culpability by the value of the interest invaded.' *Id.*"

*Lovejoy* at 388.

■ Accordingly, market value is not necessarily the highest value by any reasonable standard. In some instances, the original or replacement cost of the stolen property is an appropriate measure of value. *See e.g.,* Ohio Rev.Code Ann. § 2913.-61(D)(2) [value for personal effects determined by replacement cost]; Wis.Stat.Ann. § 943.20(2)(d) [value determined by market value or cost of replacing the property, whichever is less]; *see also State v. Renfro,* 250 Cal.App.2d 921, 58 Cal.Rptr. 832 (1967); *State v. Ellis,* 172 Ariz. 549, 838 P.2d 1310 (App.Div. 1 1992).

■ Viewing the evidence in a light most favorable to the verdict, we find that a rational fact finder could reasonably infer that the value of the ski equipment by a reasonable standard would exceed $500. Bender testified the original cost of the equipment five years ago was $600. Couture testified that it was very good equipment and its present market value may exceed $500. The jury also saw photographs of the ski equipment. A jury, applying common sense, could reasonably conclude that Bender would have spent over $500 to replace the equipment. Consequently, there is sufficient evidence to establish the ski equipment's value in excess of $500. The judgment of conviction is affirmed.

VANDE WALLE, C.J., and NEUMANN, LEVINE and ·MESCHKE, JJ., concur.

---

**4.** We may look to the *Working Papers* for insight. *State v. Hogie,* 424 N.W.2d 630 (N.D. 1988).