Filed 1/27/99 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

1999 ND 5

State of North Dakota,                 Plaintiff and Appellee

  
v.

                                                       

Brenda Ebach, Defendant and Appellant

Criminal Nos. 980125 & 980126

 

 Appeal from the District Court of McHenry County, Northeast Judicial District, the Honorable John C. McClintock, Judge.

 AFFIRMED.

 Opinion of the Court by VandeWalle, Chief Justice.

 Michael S. McIntee, State’s Attorney, 207 Main Street South, P.O. Box 90, Towner, ND 58788, for plaintiff and appellee.

 Thomas K. Schoppert, Schoppert Law Firm, Northland Professional Bldg., 600 22
nd
Avenue NW, Minot, ND 58703, for defendant and appellant.

 

State v. Ebach

Criminal Nos. 980125 & 980126

 VandeWalle, Chief Justice.

[&P&1]  Brenda Lee Ebach appealed from criminal judgments entered upon a jury verdict finding her guilty of three counts of burglary and three counts of theft of property.  We affirm the judgments of conviction.

I

[&P&2]    On January 21, 1997, the State charged Ebach with burglary in violation of N.D.C.C. &S& 12.1-22-02(1) and theft of property in violation of N.D.C.C. &S&&S& 12.1-23-02 and 12.1-23-

05(2)(a).  The complaint alleged Ebach entered the Ralph Schalow residence between November 22, 1996 and December 2, 1996 with the intent to commit theft and did take a washer, dryer and shower curtain rod exceeding $500.  Three days later, on January 24, 1997, the State charged Ebach with burglary in violation of N.D.C.C. &S& 21.1-22-02(1) and theft of property under N.D.C.C. &S& 12.1-23-02.  The complaint alleged Ebach entered the Schalow residence between March 10, 1996 and April 28, 1996 with the intent to commit a crime and took various items including: a rototiller, lawn mower, extension ladder, patio table and chairs and two lawn chairs.  The complaint alleged these items exceeded a value of $500.  The State also added two additional charges to the complaint, one for burglary under N.D.C.C. &S& 12.1-22-02(1) and another for theft of property in violation of N.D.C.C. &S& 21.1-23-02, a class B misdemeanor, for entering a locked storage shed with the intent to commit theft and for taking various items owned by Tony Marsh between October 17, 1996 and November 6, 1996.  The items included: a freezer, a trampoline, a rowing machine and two white metal cabinets, not exceeding $250.  The informations were consolidated and a jury trial was held.  Ebach was convicted of all counts.

[&P&3]  Ebach raises several issues on appeal, including:  (1) improper comments made by the state’s attorney during closing argument denied her of a fair trial; (2) the State violated  N.D.R.Crim.P. 16 by failing to disclose a statement made by the defendant; and (3) there is insufficient evidence to sustain the conviction.  We examine each of Ebach’s arguments.

II

[&P&4]  Ebach contends the trial court abused its discretion by permitting the state’s attorney to exceed the proper scope of closing argument.  Specifically, Ebach argues the prosecutor improperly:  1) vouched for the evidence and personalized the case; 2) misstated the law regarding the value of the stolen property; and 3) commented on the defendant’s silence.

[&P&5]  The control and scope of closing arguments are left to the discretion of the trial court.  
E.g.

State v. Azure
, 525 N.W.2d 654, 656 (N.D. 1994).  We will not reverse a verdict on the ground the prosecutor exceeded the scope of closing argument unless a clear abuse of discretion is shown.  
State v. Ash
, 526 N.W.2d 473, 481 (N.D. 1995);
State v. Schimmel
, 409 N.W.2d 335, 342 (N.D. 1987).  To establish an abuse of discretion, absent a fundamental error
(footnote: 0), the defendant must demonstrate the prosecutor’s comments in closing argument were improper and unfairly prejudicial.  
State v. Marks
, 452 N.W.2d 298, 302 (N.D. 1990).  Error is unfairly prejudicial only if it causes substantial injury to the defendant such that a different decision would have resulted absent the error.  
Azure
, 525 N.W.2d at 656.  We seldom reverse on appeal because it is generally presumed the jury will follow the trial court’s admonition and disregard the improper statement.  
Id.
(citing
State v. Paulson
, 477 N.W.2d 208, 210 (N.D. 1991)).  

[&P&6]  Ebach contends the State improperly vouched for the evidence against Ebach during closing argument when the prosecutor stated,  “If it was all we had, was Rob Martinson’s testimony, if that’s all we had, the State would never even have charged it out.”  In response, the State argues the allegedly improper comment was “invited” by defense counsel’s statement the State had no corroborative evidence to connect Ebach to the burglaries.  Following the allegedly improper statement, Ebach objected, moved for a mistrial and asked the court for an instruction.  Although Ebach’s motion for a mistrial was denied, the trial court directed the jury to “disregard the last comments by Mr. McIntee relative to the sufficiency of the charge against the defendant.”

[&P&7]  In
Schimmel
, we expressed our concerns regarding prosecutors providing their own personal beliefs on the evidence.  
See

Schimmel
, 409 N.W.2d at 343.  It is the jury who is the trier of fact in any court proceedings.  
Id.
 However, when a prosecutor comments personally on the evidence he may convey an impression there is evidence not presented to the jury, but known to the prosecutor, supporting the charges against the defendant.  
Id.
(citing
United States v. Young
, 470 U.S. 1 (1985)).  Furthermore, we are concerned a prosecutor’s opinion on the evidence carries with it the “imprimatur of the Government” and may induce the jury to trust the government’s view rather than its own judgment of the evidence when it is deliberating.  
Id.
   

[&P&8]   After reviewing the record, we conclude the state’s  attorney’s comment was not an improper assertion of personal belief in the truth or falsity of the evidence of the guilt of Ebach.  Rather, the statement was a proper statement regarding the evidence.  During opening argument, defense counsel discussed the need for corroborative evidence to supplement Martinson’s testimony.  In light of defense counsel’s remarks, the prosecutor’s comment did not deprive Ebach of a fair trial because the statement was an invited response by defense counsel.
See

id.
(holding remarks by state’s attorney concerning defendant’s economic status and wealth were not improper or prejudicial where they were in response to defense counsel’s portrayal of the defendant as a simple man without money).  
Compare

City of Williston v. Hegstad
, 1997 ND 56, &P& 13, 562 N.W.2d 91 (holding that prosecutor’s comment that police officer’s “job was to tell the truth” was not confined to the evidence and may have bolstered the officer’s testimony artificially).  However, even if we determined the statement to be improper, the jury was given a cautionary instruction following the comment and also given a jury instruction prior to deliberation informing them statements and arguments by attorneys cannot be considered as evidence.  
See

State v. Janda
, 397 N.W.2d 59, 65 (N.D. 1986) (stating a jury is generally presumed to follow a trial court’s admonitions);
State v. Kunkel
, 366 N.W.2d 799, 803 (N.D. 1985) (recognizing jury instructions coupled with a curative instruction can correct an allegedly prejudicial statement made by the state during closing argument).  Thus, any prejudice resulting from the prosecutor’s comment was minimized.

[&P&9]  Ebach contends the State again vouched for the charges and personalized the case when the prosecutor remarked during closing argument, “[n]ow, the defense has been working on the value.  You know, I’ve done many cases over my years, but I’ve never seen this defense.”   Following the statement, Ebach objected, moved for a mistrial and requested a curative instruction.  The court sustained Ebach’s objection and admonished the jury to disregard any personal comment made by the prosecutor.

[&P&10]  Arguments by counsel must be limited to the facts in evidence and the proper inferences flowing from them.  
See

State v. Kaiser
, 417 N.W.2d 376, 379 (N.D. 1987).  Accordingly, prosecutors should not express their personal views on the evidence to the jury.  
See

Schimmel
, 409 N.W.2d at 343.  However, we have consistently stated “inappropriate prosecutorial comments, standing alone, do not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding.”  
See, e.g.,

State v. Weatherspoon
, 1998 ND 148, &P& 23, 583 N.W.2d 391 (citing
State v. Thiel
, 411 N.W.2d 66, 71 (N.D. 1987);
City of Grand Forks v. Cameron
, 435 N.W.2d 700, 704 (N.D. 1989).  
Compare

Hegstad
, at  &P& 14 (holding improper prosecutorial comment on right to remain silent coupled with improper argument on duty of police officer to tell the truth constituted reversible error).  Instead, we will consider the probable effect the prosecutor’s improper comments would have on a jury’s ability to judge the evidence fairly.  
Cameron
, 435 N.W.2d at 704.    

[&P&11]  While we believe the prosecutor’s comment was improper, we fail to see how Ebach was unfairly prejudiced by the comment.  The jury was instructed to disregard the prosecutor’s personal statements.  Furthermore, following the admonishment, the prosecutor explained, “When I say ‛I,’ I’m talking about the State of North Dakota, the prosecution in this case, the plaintiff, not me personally.  So, understand that.”    In light of the curative instruction and further statement by the prosecutor, we conclude the improper comment did not affect the jury’s ability to judge the evidence fairly.

[&P&12]  Ebach also alleges the prosecutor’s statement regarding valuation of the stolen property during closing argument was a misstatement of the law.  We disagree.  According to the transcript, Ebach objected to the following statement by the prosecutor:

The Court will give you an instruction, I understand, how you’re to determine the value of the property that was taken.  And I believe the instruction will say something about you are to give it the highest value by any reasonable standard.  I did not say the lowest or the middle.  The law is, according to what I believe the Court will give you, is it [sic] is of the highest value.  You are permitted to use purchase price.  You actually are permitted to use replacement price.  

Following the statement, Ebach’s counsel objected, moved for a mistrial and requested a curative instruction from the court.  The trial court instructed the jury stating, “you’ve heard some values that have been given by testimony through witnesses.  And after I give you the instruction, you’ll give that testimony that has been provided its appropriate weight and credibility.”

[&P&13]  Section 12.1-23-05(6), N.D.C.C. provides: “For purposes of grading, the amount involved in a theft under this chapter shall be the highest value by any reasonable standard, regardless of the actor’s knowledge of such value, of the property or services which were stolen by the actor . . . .”  The statute was enacted to provide wide latitude for determining value.  
State v. Ensz
, 503 N.W.2d 236, 238-39 (N.D. 1993).  The rationale of this statute is that the highest reasonable value is to be used and the reasonableness of valuation is to be measured against any standard fair under the circumstances.  
State v. Lovejoy
, 464 N.W.2d 386, 388 (N.D. 1990).  We have stated market value is not necessarily the highest value by any reasonable standard.  
Ensz
, 503 N.W.2d at 239.  An appropriate measure of the highest value by any reasonable standard may include the original or replacement cost of the stolen property.  
Id.
 As a result, the jury may consider several possible values for the property.  The prosecutor’s statement is consistent with our governing statutes, case law and the instruction given to the jury.

[&P&14]  Ebach maintains the State improperly commented on her right of silence during closing argument.  According to the transcript, the prosecutor stated, “Now, at the Schalow and Marsh thefts, she was present, according to the testimony we, the State, has presented.   Today, she says something different. We’ve never heard that.”  Immediately following the statement, Ebach objected, moved for a mistrial and asked the court for a curative instruction.  Following Ebach’s objection, a curative instruction was given to the jury to disregard “why prior testimony was given or not given.”    

[&P&15]  A comment on the silence of a defendant is an improper comment on the right to remain silent in violation of the Fifth and Fourteenth Amendments of the Constitution.  
Hegstad
, at &P& 9.  However, Ebach has taken the prosecutor’s statement out of context.  We believe the prosecutor’s statement merely draws attention to the inconsistency between Ebach’s and Martinson’s accounts of what happened and is not a statement regarding Ebach’s silence prior to testifying.  We, therefore, conclude the comment, as it has been construed by Ebach, does not require reversal.

[&P&16]  Ebach maintains the cumulative effect of the prosecutor’s improper comments cannot be cured by a cautionary instruction.  We disagree.  The mere quantity of alleged errors is not in itself the measure for reversal.  
State v. Skjonsby
, 319 N.W.2d 764, 795 (N.D. 1982).  “[E]rror is reversible only if it appears from the record that the injury was prejudicial, that substantial injury resulted and a different decision probably would have resulted absent the error.  
Id.
(citing
State v. Mehralian
, 301 N.W.2d 409 (N.D. 1981)).  After thoroughly examining the record, we conclude there is no basis for reversing Ebach’s conviction based on the cumulative effect of any alleged errors because the asserted errors were not errors or,  if they were error, are not unfairly prejudicial.  

III

[&P&17]  Ebach’s next arguments stem from a statement by Robert Martinson,  during trial concerning the disposal of evidence. Martinson was involved with Ebach in the thefts and burglaries.  During direct examination of Martinson, the following exchange occurred:

 Q  (Mr. McIntee continuing) What happened to the rowing machine?

 A  It was thrown out.

 Q  Where?

 A  In the ditch along the highway going towards Anamoose or something.

 Q  Okay.  Who threw it out?

 A  Brenda and I.

 Q  Why?

A  Well, when we got in trouble, Brenda’s lawyer recommended that if she had no evidence they couldn’t prosecute.

Following the testimony, Ebach immediately objected on the grounds the statement was hearsay and moved for a mistrial.  Ebach also asked the court for a continuance to subpoena Ebach’s prior attorney.
(footnote: 2)  The trial court denied Ebach’s motions for a mistrial and a continuance, but instructed the jury to disregard the answer given by the witness concerning Mr. McIntee’s last question to Martinson regarding what happened to the rowing machine.  The trial court also informed the jury Ebach was represented by a different attorney prior to the start of the trial.  

[&P&18]  Ebach argues the prosecution knew a hearsay statement by Martinson was going to go before the jury, and the damage from this statement could not be undone through a curative instruction to the court.  Ebach further maintains the statement should have been disclosed to the defense under N.D.R.Crim.P. 16, and the trial court’s refusal to grant a continuance to subpoena the attorney constituted an abuse of discretion citing
State v. Nodland
, 493 N.W.2d 697 (N.D. 1992).

[&P&19]  The disclosure of witnesses and evidentiary material is governed by Rule 16 of the North Dakota Rules of Criminal Procedure.  
State v. Roerick
, 557 N.W.2d 55, 56 (N.D. 1996).  According to Ebach, the State’s failure to inform defense counsel of the statement concerning Ebach’s former attorney allegedly recommending she dispose of the evidence constitutes a violation of the State’s continuing duty to disclose under Rule 16(c), N.D.R.Crim.P.  We disagree.  

[&P&20]  Nowhere, within the rule does it state the prosecution must turn over this type of oral statement to the defense.  
See
 N.D.R.Crim.P. 16.  The portion of the rule exclusively discussing oral statements is Rule 16(a)(1)(A)(iv), N.D.R.Crim.P.  This section requires the State to disclose or make available the information “the substance of any other oral statement made by the defendant whether before or after arrest in response to interrogation by any person then known by the defendant to be a government agent.”  Martinson’s statement regarding what the former attorney allegedly informed Ebach does not fall under this provision; we therefore conclude N.D.R.Crim.P. 16 is inapplicable.

[&P&21]  But, even assuming the State violated the spirit of N.D.R.Crim.P. 16 by failing to inform defense counsel of the statement, we do not believe Ebach has shown significant prejudice under the circumstances requiring reversal.  
See

State v. McNair
, 491 N.W.2d 397, 400 (N.D. 1992).  If an error is not of a constitutional magnitude, it is reversible only upon a showing the defendant has been denied substantial rights.  
Id.
 No substantial rights are affected when it is clear the defendant was not significantly prejudiced by the discovery violation.  
Id.
 In our view, any possible prejudice created by Martinson’s statement was removed when the jury was instructed to disregard the question by the state’s attorney inquiring why Martinson and Ebach disposed of the rowing machine.   

[&P&22]  Ebach further argues the trial court erred when it denied her motion for a continuance relying on
Nodland
.  Ebach’s reliance on this case is misplaced.  In
Nodland
, we determined the trial court abused its discretion when it denied the defendant a continuance after the admission of a document created an unforeseen need for counsel to question a witness regarding the document.  
See

Nodland
, 493 N.W.2d at 700.  We emphasized the case fell within unique circumstances because the document was a surprise admission and counsel had no reason to expect the document would be admitted at trial.  
Id.
  

[&P&23]  Unlike the defendant in
Nodland
, Ebach is in a weak position to assert prejudice and unfair surprise because defense counsel had access to information concerning the disposal of evidence from his client and also had reason to believe such statement might be elicited from Martinson.  
See

McNair
, 491 N.W.2d at 400 (concluding the defendant was not prejudiced or unfairly surprised where witness providing alleged surprise information could have been deposed by defense counsel);
State v. Martin
, 391 N.W.2d 611, 614-615 (N.D. 1986) (determining defendant was in a weak position to argue prejudice from State’s failure to produce records where defendant had access to and could have subpoenaed them).  The transcript of Martinson’s interview with police officers contained information concerning the disposal of evidence.  Furthermore, the record indicates defense counsel received a copy of Martinson’s statement to the police.  During this interview, Martinson stated, “she [Ebach] said to get the other stuff out of your house ya know.”  As a result, we conclude there was no unfair surprise, and the trial court’s denial of a continuance was not error.

IV

[&P&24]  Ebach contends the evidence presented at trial was insufficient to sustain the convictions.  Our standard of  review is well established for cases in which a defendant challenges the sufficiency of the evidence to support a criminal conviction.  
State v. Kunkel
, 548 N.W.2d 773 (N.D. 1996).  To successfully challenge the sufficiency of the evidence on appeal, a defendant must convince us the evidence permits no reasonable inference of guilt.  
State v. Breding
, 526 N.W.2d 465, 469 (N.D. 1995).    A criminal conviction will only be reversed if, after viewing the evidence and all reasonable evidentiary inferences in the light most favorable to the verdict, no rational fact finder could have found the defendant guilty beyond a reasonable doubt.  
State v. Lusby
, 1998 ND 19, &P& 5, 574 N.W.2d 805.  The tasks of weighing the evidence and judging the credibility of the witnesses belongs exclusively to the jury, not to the Court.  
Lovejoy
, 464 N.W.2d at 388.

[&P&25]  Ebach argues there was insufficient evidence for the jury to convict her for the Marsh burglary.  To establish burglary under N.D.C.C. &S& 12.1-22-02, the State must prove a person “willfully enters or surreptitiously remains in a building or occupied structure, or a separately secured or occupied portion thereof, when at the time the premises are not open to the public and the actor is not licensed, invited, or otherwise privileged to enter or remain as the case may be, with intent to commit a crime therein.”  Ebach maintains there is no evidence proving she entered the storage shed containing Marsh’s property.

[&P&26]  We believe the evidence, viewed in a light most favorable to the verdict, supports an inference by the jury that Ebach was guilty of burglary beyond a reasonable doubt.  At trial, Martinson testified it was his and Ebach’s idea to go to the storage shed.  He further stated Ebach accompanied him there.  In response to a question inquiring about what happened to a freezer taken from the shed, Martinson replied, “
We
took it home, put it at my place . . . .”  (Emphasis added).    Chief Deputy Sheriff Lawrence Gessner testified the metal cabinets and welder taken from the shed were found at Ebach’s father’s farm.  Gessner further stated the washer Ebach admitted taking from the Schalow residence was also recovered at her father’s farm.  From our review of the record, we believe there is sufficient evidence to support an inference by the jury Ebach was guilty of burglary.  

[&P&27]  Ebach argues the evidence was also insufficient to show the value of the property taken from the Schalow residence during the spring and fall of 1996 exceeded $500.  In order to convict a defendant of theft of property under N.D.C.C. &S&&S& 12.1-23-02 and 12.1-23-05(2)(a), the State must prove by evidence beyond a reasonable doubt that the value of the property, by any reasonable standard, exceeds $500.  
Ensz
, 503 N.W.2d at 238.  As we previously explained, for purposes of grading an offense, the amount involved in a theft is the highest value by any reasonable standard.  
See
 N.D.C.C. &S& 12.1-23-05(6).  The highest value by a reasonable standard is not necessarily the market value, but can also be the original or replacement cost of the stolen property.  
See

Ensz
, 503 N.W.2d at 239.  

[&P&28]  At trial, Schalow provided the court with the replacement cost of various items taken from his residence including: a washer and dryer, rototiller, ladder, plastic table and lawn chairs.  In addition, Schalow testified he purchased the washer and dryer at Metzger’s in Minot, North Dakota, but did not know what he paid for them.  Gary Ulland, the owner of Metzger’s testified the market value for the washer and dryer would be approximately $250, but stated a new washer and dryer of an identical make and model would cost about $600.  In addition, Paul Poppenhagen, an individual who once worked in the business of small-engine repair and sales provided testimony regarding the value of some of the items.  According to Poppenhagen, the market value of the Schalow’s rototiller was between $100 and $125 and the mower between $60 and $80.  

[&P&29]  From this testimony, we conclude a rational fact finder could reasonably infer the value of the items taken from the Schalow residence during the spring and fall of 1996 exceeded $500.  The jury heard both the amount it would cost to replace the items with new items, as well as the cost to replace the items with used items of a similar age.  In addition, the jury saw photographs of the stolen property.  When considering the evidence most favorable to the verdict, surely a jury could have concluded Schalow would have to spend over $500 to replace the items taken from his residence on the two separate occasions.   

[&P&30]  For the foregoing reasons, we affirm the judgments of conviction.

[&P&31]  Gerald W. VandeWalle, C.J.

 Carol Ronning Kapsner

 Mary Muehlen Maring

 William A. Neumann

 Dale V. Sandstrom

 

FOOTNOTES
0:⊃    
 When the closing argument violates the defendant’s right to due process we have reversed.  
City of Williston v. Hegstad
, 1997 ND 56, &P& 14, 562 N.W.2d 91 (noting that a prosecutor’s use of defendant’s post-arrest silence to impeach defendant’s exculpatory story, told for the first time at trial, violates defendant’s right to due process).

2:    
 
At trial, the State contended it first heard the statement concerning the disposal of evidence twenty minutes before Martinson testified.