STATE of North Dakota, Plaintiff
and Appellee,

v.

Robert Steven ENSMINGER, Jr.,
Defendant and Appellant.

Criminal No. 950124.

Supreme Court of North Dakota.

Jan. 30, 1996.

Alisha Ankers of Johnson Law Office, Fargo, for defendant and appellant.

John T. Goff, State's Attorney, Fargo, for plaintiff and appellee.

LEVINE, Justice.

Robert Steven Ensminger, Jr., appeals from a judgment entered on jury verdicts finding him guilty of being an accomplice to attempted murder and robbery. We affirm.

Ensminger was charged with being an accomplice to a July 27, 1994, attack on his employer, a Fargo contractor. Ensminger's employer was struck in the head with a sledgehammer and cut with a knife. His wallet and truck were then stolen. A jury found Ensminger guilty of being an accomplice to attempted murder and robbery. He appealed.

Ensminger first argues that the trial court should have granted his motion to suppress evidence that the State allegedly failed to disclose. Under Rule 16, NDRCrimP, Ensminger made a pretrial request for disclosure of evidence. In a pretrial motion to suppress, Ensminger complained that the State violated Rule 16 because of its untimely production of the evidence he requested. Ensminger argued he was prejudiced because he did not have the opportunity to see certain photographs, fingerprint evidence, and medical records until the State produced them shortly before trial. The trial court denied Ensminger's motion to suppress.

Rule 16, NDRCrimP, is a discovery rule, not a constitutional mandate, and is designed to further the interests of fairness. *State v. McNair*, 491 N.W.2d 397 (N.D.1992). Rule 16 says that, upon written request by the defendant, the prosecuting attorney shall allow inspection of documents and tangible objects "which are within the possession, custody, or control of the prosecution, and which are material to the preparation of the defendant's defense, or are intended for use by the prosecutor as evidence in chief at the trial, or were obtained from or belong to the defendant." NDRCrimP 16(a)(1)(C). The rule also enables the defendant to request in writing the inspection of reports of examinations and tests "the existence of which is known, or by the exercise of due diligence may become known, to the prosecuting attorney, and which are material to the preparation of the defense or are intended for use by the prosecutor as evidence in chief at the trial." NDRCrimP 16(a)(1)(D).

A court may impose sanctions if a party fails to comply with Rule 16, and one possible sanction is prohibiting the delinquent party from introducing into evidence the material not disclosed. NDRCrimP 16(d)(2). Rule 16, NDRCrimP, was derived from Rule 16, FRCrimP. *See* NDRCrimP 16 (explanatory note). When a state rule is derived from a federal rule, we treat the federal interpretation of the rule as persuasive authority. *State v. Ganje*, 481 N.W.2d 227 (N.D.1992). Therefore, like the federal courts, we review a trial court's decision not to exclude evidence as a Rule 16 sanction under the abuse of discretion standard. *See, e.g., United States v. Tibesar*, 894 F.2d 317 (8th Cir.1990), *cert. denied*, 498 U.S. 825, 111 S.Ct. 79, 112 L.Ed.2d 52 (1990). It is not an abuse of discretion to admit undisclosed information into evidence if the State's failure to comply with Rule 16 has not prejudiced the defendant. *See State v. Norman*, 507 N.W.2d 522 (N.D.1993).

The untimely disclosed fingerprint reports were not used at trial. A witness for the State, however, had testified at the preliminary hearing that the fingerprint evidence "would confirm that [Ensminger] was [at the scene of the crime] in the first place." Ensminger discovered shortly before trial that the State had no fingerprint evidence linking him to the scene of the crime, and he argues that he would better have been able

to prepare his defense if he had discovered this fact earlier.[1] The record shows, however, that the non-existence of fingerprint evidence linking Ensminger to the crime scene was brought out and discussed in detail at the trial during direct and cross-examination. Ensminger has not shown that he was prejudiced by the late disclosure of this evidence.

The untimely disclosed medical records were also not used at trial; instead, an expert witness testified as to his evaluation of the records. Ensminger cross-examined this expert witness at length on his evaluation and conclusions. Ensminger has not shown that he was prejudiced by the untimely disclosure of the medical records. The allegedly untimely disclosed photographs were received into evidence. The record shows that the existence of these photographs had been disclosed in the police report, which was available to the defense. Ensminger has failed to demonstrate prejudice from the use of these photographs.

Because Ensminger has failed to show that he was prejudiced by the late disclosure of the fingerprint reports, medical records, and photographs, we hold that the trial court did not abuse its discretion in denying the motion to suppress this evidence.

Ensminger also argues that there was insufficient evidence to support the jury's guilty verdicts. When we review the sufficiency of evidence to convict, we look only to the evidence most favorable to the verdict and the reasonable inferences that can be drawn from it, and we will sustain a guilty verdict unless no rational fact finder, viewing this evidence, could have found the defendant guilty beyond a reasonable doubt. *State v. Vance*, 537 N.W.2d 545 (N.D.1995). "We do not weigh conflicting evidence, nor do we judge the credibility of the witnesses; instead, we look only to the evidence and in-

ferences most favorable to the verdict to ascertain if there is substantial evidence to warrant a conviction." *State v. Gonderman*, 531 N.W.2d 11, 16 (N.D.1995).

Witnesses testified that Ensminger, his accomplice, and the victim were the only people present at the time and place the incident occurred. Testimony also showed that Ensminger and his accomplice were employed by the victim. The first police officer to arrive on the scene testified that the victim said that he had been beaten up by two of his employees. The victim testified that, after he had been hit in the head, he looked up and saw Ensminger standing with a sledgehammer in his hands. Ensminger admitted that he was in the house at the time of the incident, that he took the victim's money, and that he offered no aid to the injured victim. Witnesses testified that, immediately after the incident, Ensminger was "real nervous" and fleeing from the scene. We hold that this evidence, viewed in the light most favorable to the verdicts, is sufficient to support Ensminger's convictions of being an accomplice to attempted murder and robbery.

We affirm.

VANDE WALLE, C.J., and NEUMANN, SANDSTROM and MESCHKE, JJ., concur.

---

1. The prosecutor responded to Ensminger's discovery request by inviting his defense team to inspect the State's files. The State suggests that if Ensminger's defense team had been more diligent in inspecting these "open files," it would have discovered the fingerprint evidence earlier.

While we approve of the State's "open files" policy, the policy does not abrogate or dilute the requirement that prosecutors disclose evidence that thereafter becomes known *or* evidence that "by the exercise of due diligence may become known." *See* NDRCrimP 16(a)(1)(D).