1999 ND 80

STATE of North Dakota, Plaintiff
and Appellee,

v.

Lynn C. GOULET, Defendant
and Appellant.

No. 980131.

Supreme Court of North Dakota.

April 29, 1999.

Leann K. Bertsch, Assistant State's Attorney, Bismarck, for plaintiff and appellee.

Chad R. McCabe, Vinje Law Firm, Bismarck, for defendant and appellant.

Timothy Q. Purdon, Dickson Law Office, Bismarck, Barbara Bergman, Co–Chair NACDL Amicus Committee, University of New Mexico, School of Law, Albuquerque, and David M. Porter, Co–Chair NACDL Amicus Committee, Sacramento, for amicus curiae National Association of Criminal Defense Lawyers. Submitted on brief.

KAPSNER, Justice.

[¶ 1] Lynn C. Goulet appealed from a criminal judgment entered on a jury verdict finding him guilty of class A misdemeanor assault. Goulet contends his conviction should be reversed because the trial court erroneously disclosed his ex parte application for funds to depose a witness, the prosecution violated discovery rules by failing to disclose a document and trial witness, and the trial court erred in refusing to allow him an opportunity for surrebuttal. We conclude the trial court did not err in disclosing the application because Goulet failed to invoke the provisions of N.D.R.Crim.P. 17(b) and (f), the prosecution did not violate discovery rules, and Goulet failed to preserve for appeal his challenge to denial of surrebuttal. We affirm.

I

[¶ 2] On the evening of September 25, 1997, Jamie Schell was working as a doorman at a Bismarck bar and was assigned to parking lot security. Schell noticed a commotion in the doorway to the bar and began walking there to investigate. Witnesses testified Goulet struck Schell in the jaw and ribs as Schell tried to get to the front doorway. Schell suffered a fractured jaw and chipped tooth. Goulet initially denied, but later admitted, hitting someone that evening at the bar. Defense witnesses testified Schell was attacking Jason Baca when Goulet struck Schell. On rebuttal, a prosecution witness testified Baca was nowhere in the vicinity of Goulet or Schell during the altercation. A jury found Goulet guilty of one count of class A misdemeanor assault in violation of N.D.C.C. § 12.1–17–01.1. Goulet appealed.

II

[¶ 3] Goulet contends he was denied his constitutional due process and equal protection rights when the trial court did not seal, but disclosed to the prosecution, his "ex parte application for funds to depose witness

Jason Baca." Goulet argues the trial court, by allowing disclosure, made the prosecution aware of attorney-client privileged information, including his entire theory of defense.

[¶ 4] Goulet had applied for and received court-appointed defense counsel. After a trial date had been set, Goulet moved for a continuance so his attorney could contact a number of defense witnesses, including Baca, who was living in Texas. Goulet said in the motion Baca and two of the other witnesses "would testify as to the defendant's use of defense of himself and others." Goulet also made a "motion for leave of court to pay expenses for deposing witness, or to pay expenses to bring witness to trial." This motion related solely to Baca. The trial court granted the motion for continuance, but denied the motion to depose Baca or bring him to trial because Goulet "has not made a showing that the proposed witness would testify favorably to the defense and has not communicated with the proposed witness directly."

[¶ 5] Goulet then brought an "ex parte application for funds to depose witness Jason Baca." Goulet explained the ex parte application was based on his "prior motion and brief for leave of Court under N.D.R.Cr.P. Rule 15." Goulet also said in underscored and emphasized text:

> This ex parte application should be sealed from the State, pursuant to N.D.R.Cr.P. Rule 16(b)(2), as it contains confidential information not subject to disclosure for the defendant's defense, and such information would unfairly prejudice the defendant and give the State an advantage if it were disclosed.

Goulet's application said Baca was expected to testify at trial about Goulet defending Baca from Schell during the altercation. The application also stated "Baca is crippled and has deformed arms. Specifically, his wrists are fused together so that he cannot even make a fist." Goulet said he needed "to secure this testimony by way of a deposition" because Baca was "undependable" and "[s]imply giving him a plane ticket may not be enough to guarantee that he show up properly for trial."

The trial court refused to grant the application and seal the request, explaining:

The defense asks that the application be sealed under N.D.R.Cr.P. Rule 16(b)(2). That Rule deals with information which is not required to be disclosed by the defense during discovery, but does not protect communications by the defendant with the Court. Even if the defendant had funds to pay for the proposed deposition, he would be required to seek leave of the Court under Rule 15(a)(3). That request would be in the nature of a motion, required to be served on the opposing party.

The defense seems to believe that if Jason Baca is secretly deposed, his testimony would be preserved for trial in this case. Rule 15(c) of the Rules of Criminal Procedure requires that notice of depositions be given. A deposition taken without notice to the prosecution could not be used at trial. The Rule also requires the presence of the defendant at the deposition unless voluntarily waived.

(The defense also indicates the witness it proposes to depose is not reliable and even if subpoenaed and provided with an airline ticket, may not appear. The defense wants the Court to believe that the defendant would be more likely to appear at a deposition in Texas. The argument lacks merit).

[¶ 6] Goulet then filed a motion for leave of court and a supporting brief reiterating everything in the ex parte application and requesting his attorney and the prosecutor be allowed either to take Baca's deposition in Texas, or take a phone deposition of Baca, or be authorized expenses for Baca to testify at the trial in North Dakota. The prosecution objected to the deposition, but requested the trial court authorize expenses so Baca could be brought to the trial.

[¶ 7] The trial court ultimately approved payment of expenses to ensure Baca's appearance at the trial. Baca testified he has a birth defect which caused bones in his wrists to fuse together, rendering him unable to use his hands. Baca further testified Goulet was attempting to protect him when Goulet struck Schell. On rebuttal, Baca's former probation officer testified Baca never told

her about his arms when she asked him about "any health issues that interfere with daily functioning." The prosecution also used a probation questionnaire completed by Baca to cross-examine and impeach Baca.

[¶ 8] To support his argument the trial court violated his due process and equal protection rights by refusing to seal his ex parte application, Goulet now relies on N.D.R.Crim.P. 17, which provides in pertinent part:

*Subpoena.*

. . . .

*(b) Defendants Unable to Pay.* The court shall order at any time that a subpoena be issued for service on a named witness upon an ex parte application of a defendant upon a satisfactory showing that the defendant is financially unable to pay the fees of the witness and that the presence of the witness is necessary to an adequate defense. If the court orders a subpoena to be issued, the costs incurred by the process and the fees of the witness so subpoenaed must be paid in the same manner in which similar costs and fees are paid in the case of a witness subpoenaed in behalf of the prosecution.

. . . .

*(f) For taking deposition; place of examination.*

(1) *Issuance.* An order to take a deposition authorizes the issuance by the clerk of court or a magistrate of subpoenas for the persons named or described therein.

(2) *Place.* A witness whose deposition is to be taken may be required by subpoena to attend at any place designated by the trial court, taking into account the convenience of the witness and the parties.

Rule 17(b) and (f), which are patterned after their federal counterparts, provide a means for a defendant unable to pay witnesses' fees and travel costs to have persons subpoenaed for trial or deposition. *See* Explanatory Note to N.D.R.Crim.P. 17; *United States v. Thomas,* 475 F.2d 115, 116 (10 th Cir.1973). Because Goulet did not invoke the provisions of Rule 17 in his application, we cannot say the trial court erred in failing to treat the application as an ex parte request.

[¶ 9] Goulet's application is confusing at best. Nowhere in the document is Rule 17(b) or (f) mentioned. Instead, Goulet cites to N.D.R.Crim.P. 15 and 16(b)(2), neither of which provides for ex parte applications. Rule 15 relates to depositions and specifically requires that all parties be given notice of the person to be examined, and ordinarily requires the presence of the defendant. *See* N.D.R.Crim.P. 15(c) and (f). Rule 16(b)(2) is a discovery rule relating to information not subject to disclosure by the defendant. Perhaps Goulet's application is most reasonably interpreted as a Rule 15 request to take a deposition to perpetuate testimony, but N.D.R.Crim.P. 15(a)(3) specifically requires the requesting party make a motion to the trial court for permission to do so, and that motion would be required to be served on all parties. *See* N.D.R.O.C. 3.2. Goulet's statement the application should be sealed "pursuant to" Rule 16(b)(2) is particularly distracting because Rule 16 is a discovery rule and discovery had nothing to do with the substance of the ex parte request.

[¶ 10] Goulet argues the trial court nevertheless should have recognized the application as a request under Rule 17 for an ex parte application rather than as an attempt to "secretly depose[ ]" Baca. Just as judges are not expected to be ferrets, obligated to engage in unassisted searches of the record for evidence to support a litigant's position, *see Lindell v. North Dakota Workers Compensation Bureau,* 1998 ND 174, ¶ 17, 584 N.W.2d 520, neither are they expected to be psychics, with the ability to divine a party's true intentions in mislabeled and misleading documents. The parties have the primary duty to bring to the court's attention the proper rules of law applicable to a case. *See Berg v. Ullman ex rel. Ullman,* 1998 ND 74, ¶ 44, 576 N.W.2d 218 (Neumann, J., dissenting). The trial judge's failure to view Goulet's motion as a valid ex parte request is justified by ethical obligations. Our N.D.Code Jud. Conduct Canon 3(B)(7)(a) and N.D.R. Prof. Conduct 3.5 explicitly prohibit ex parte contacts, except as authorized by law. *See Millang v. Hahn,* 1998 ND 152, ¶ 3 n. 1, 582 N.W.2d 665. We cannot fault the trial court for following its ethical obligation

to not permit or consider ex parte communications concerning a pending proceeding absent a clear indication in the motion documents that it would be legally proper to do so.

 [¶ 11] We conclude the trial court did not err in failing to consider Goulet's ex parte application as a Rule 17 request for funds to take a witness's deposition. Consequently, Goulet's argument about Rule 17 is tantamount to raising an issue for the first time on appeal. We do not consider arguments raised for the first time on appeal. *See, e.g., In re Estate of Peterson,* 1997 ND 48, ¶ 19, 561 N.W.2d 618. In any event, Goulet exaggerates the effect of the trial court's refusal to seal the application. Before Goulet filed the application, the prosecution was informed about Baca as well as Goulet's defense of "defense of himself and others." Goulet conceded during oral argument that the only information he wanted sealed from the prosecution, *i.e.,* that Baca had a birth defect that rendered his arms useless, would have been disclosed to the prosecution before trial through a deposition, even if the trial court had treated his application as a Rule 17 ex parte application for funds for a deposition and granted the request. Trial court error which does not prejudice substantial rights of the accused may be disregarded. *See State v. Osier,* 1997 ND 170, ¶ 11, 569 N.W.2d 441.

 [¶ 12] Goulet also requests an advisory opinion on the proper procedure for indigent defendants to receive funding on an ex parte basis for investigative defense assistance not specifically provided for by statute or rule. *See, e.g.,* N.D.C.C. § 12.1–04.1–02; N.D.R.Crim.P. 17(b). Goulet and amicus curiae cite numerous federal and state court decisions recognizing constitutional difficulties when indigent defendants must disclose the theory of their defense to the prosecution to obtain financial assistance to mount that defense, *see, e.g., Smith v. McCormick,* 914 F.2d 1153 (9 th Cir.1990); *State v. Ballard,* 333 N.C. 515, 428 S.E.2d 178 (1993), and the

statutes and rules these jurisdictions have devised in an attempt to alleviate the dilemma. *See, e.g.,* 18 U.S.C. § 3006A(e); Minn. Stat. Ann. § 611.21. We recognize the concern of the defense bar. However, we do not give advisory opinions. *See State v. Dalman,* 520 N.W.2d 860, 862 (N.D.1994). The problem deserves study and consideration by the Joint Procedure Committee for appropriate recommendations to this Court. *See City of Fargo v. Dawson,* 466 N.W.2d 584, 586 n. 4 (N.D.1991).

### III

[¶ 13] Goulet contends his discovery rights were violated because the prosecution, prior to trial, failed to disclose to the defense the probation questionnaire and that Baca's former probation officer would be a rebuttal witness. We disagree.

 [¶ 14] Under N.D.R.Crim.P. 16(f)(1), the prosecution was obligated to furnish to the defendant, upon his written request, "a written list of the names and addresses of all prosecution witnesses, and any statements made by them, whom the prosecuting attorney intends to call *in the presentation of the case in chief,* ..." (Emphasis added). The probation officer was not called to testify in the prosecution's case in chief, but was called for purposes of rebuttal after Baca testified for the defense. The prosecution was not required by Rule 16 to provide this information to Goulet.

 [¶ 15] Goulet's argument about the prosecution's failure to give him a copy of the questionnaire is equally unavailing. To establish a *Brady* [1] discovery violation, a defendant must show (1) the government possessed evidence favorable to the defendant; (2) the defendant did not possess the evidence and could not have obtained it with reasonable diligence; (3) the prosecution suppressed the evidence; and (4) a reasonable probability exists that the outcome of the proceedings would have been different if the evidence had been disclosed. *State v.*

---

1. In *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the United States Supreme Court held "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

*Sievers*, 543 N.W.2d 491, 496 (N.D.1996). Goulet failed to show the questionnaire was favorable to him, and furthermore the prosecution never suppressed that evidence. The prosecution's discovery response indicated it was maintaining "an open file in this matter and will continue to do so." The state is not required to affirmatively provide copies of documents in its file, but is only required to make them available for the defendant to inspect and copy. *See State v. Flynn,* 479 N.W.2d 477, 478 (N.D.1992). The prosecution did that here.

[¶ 16] We conclude the prosecution did not violate the discovery rules under N.D.R.Crim.P. 16.

### IV

[¶ 17] Goulet contends the trial court erred when it refused to allow him an opportunity for surrebuttal after Baca's probation officer testified. Goulet argues the trial court erroneously believed the defense was not entitled to surrebuttal as a matter of law, and in so ruling, prejudiced his case. The right of surrebuttal is discretionary with the trial court. *See* N.D.C.C. § 29–21–01; *State v. Carlson,* 1997 ND 7, ¶ 12, 559 N.W.2d 802. Assuming the trial court should have allowed surrebuttal, the alleged error is not reversible in this case.

[¶ 18] Before an aggrieved party can challenge the exclusion of evidence, the party must have made an offer of proof demonstrating prejudice from the court's refusal to allow the evidence. *See, e.g.,* N.D.R.Evid. 103(a)(2); *Sandbeck v. Rockwell,* 524 N.W.2d 846, 851 (N.D.1994); *Dewitz by Nuestel v. Emery,* 508 N.W.2d 334, 339 (N.D.1993). Goulet made no offer of proof what his surrebuttal evidence would be. Goulet failed to preserve this issue for review.

[¶ 19] We conclude the trial court did not commit reversible error in refusing to allow Goulet an opportunity for surrebuttal.

### V

[¶ 20] The criminal judgment is affirmed.

[¶ 21] VANDE WALLE, C.J., MARING and NEUMANN, JJ., and EVERETT NELS OLSON, District Judge, concur.

[¶ 22] EVERETT NELS OLSON, D.J., sitting in place of SANDSTROM, J., disqualified.

