2003 ND 41

**CITY OF GRAND FORKS,**
**Plaintiff and Appellee,**

v.

**Darin Lee RAMSTAD, Defendant**
**and Appellant.**

No. 20020120.

Supreme Court of North Dakota.

March 26, 2003.

Gary E. Euren, City Prosecutor, Grand Forks, ND, for plaintiff and appellee.

Steven M. Light, Larivee & Light, Grand Forks, ND, for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1]  Darin Ramstad appealed from a judgment of conviction for driving under the influence of alcohol.  We affirm.

I

[¶ 2]  On February 20, 2002, Darin Ramstad was arrested for driving under the influence of alcohol.  He was taken to the Grand Forks Police Department, where he consented to an intoxilyzer test.  The test indicated Ramstad's blood alcohol level was .13 percent.

[¶ 3]  On February 21, 2002, Ramstad's attorney served discovery requests upon the City. Among numerous other items, Ramstad requested that the City disclose:

  d.  the dates of all simulator tests (if applicable) run by the operator within twelve months prior to the date of Defendant's tests to verify the validity of his test certification;

  . . . .

  g.  the date of [the breath analyzer's] latest certification;

  h.  any repair records of the breath analyzer;

  i.  whether the breath analyzer has been tested for radio frequency interference (RFI) and, if so, the dates of the testing, the circumstances under which the testing was done, the person who tested the analyzer, the FRI [sic] sources to which the analyzer was subjected, and the distance each source was to the analyzer; . . . .

[¶ 4]  In response to Ramstad's discovery requests, the City on February 28, 2002, provided some of the items which had been requested.  The cover letter indicated that the enclosed items constituted the City's "entire file" on Ramstad's case.  The requested items regarding the breath analyzer and test operator were not provided.

[¶ 5]  Trial was set for May 15, 2002, with jury selection scheduled for May 14, 2002.  On May 14, 2002, Ramstad served a motion to suppress evidence of the chemical test results because of the City's failure to provide the requested discovery materials.  That same day, the City faxed the requested materials to Ramstad's attorney.

[¶ 6]  On May 15, the morning of the scheduled trial, the trial court heard the suppression motion in chambers.  Ramstad's attorney advised the court that Ramstad had retained an expert who would have testified if the breath analyzer

records had been provided earlier, and Ramstad's attorney moved for a continuance to allow the expert to review the disclosed documents. The trial court denied the motion to suppress and the motion for a continuance.

[¶ 7] The breath test results were admitted into evidence and the jury returned a guilty verdict. A judgment of conviction was entered and Ramstad appealed.

## II

[¶ 8] Ramstad argues the requested information was exculpatory or could have been used to "impeach" the accuracy of the breath analyzer, and therefore the City's failure to disclose those records violated his due process rights under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

[¶ 9] In *Brady*, the United States Supreme Court held that suppression by the prosecution of evidence favorable to an accused violates due process if the evidence is material to guilt or punishment. *Id.* at 87; *see State v. Sievers*, 543 N.W.2d 491, 495 (N.D.1996). To establish a *Brady* violation, the burden is upon the defendant to show: "(1) the government possessed evidence favorable to the defendant; (2) the defendant did not possess the evidence and could not have obtained it with reasonable diligence; (3) the prosecution suppressed the evidence; and (4) a reasonable probability exists that the outcome of the proceedings would have been different if the evidence had been disclosed." *State v. Goulet*, 1999 ND 80, ¶ 15, 593 N.W.2d 345; *see also Sievers*, at 496. Ramstad has failed to establish two of the elements of a *Brady* violation.

[¶ 10] The initial inquiry when a defendant alleges a *Brady* violation is whether the undisclosed material was favorable to the defendant. The United States Supreme Court has stated that the first component of a *Brady* violation is that "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching." *Strickler v. Greene*, 527 U.S. 263, 281–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). As noted in 26 James Wm. Moore et al., *Moore's Federal Practice* § 633.06[3] (3d ed.2002), "[i]f the evidence is not exculpatory or valuable for impeachment purposes, the evidence is not *Brady* material and the government has no duty to disclose it." We have previously indicated that "by definition, *Brady* materials are plainly exculpatory," and *Brady* does not apply where it is merely "speculative whether the evidence *might* have been exculpatory, or *might* have been inculpatory." *State v. Steffes*, 500 N.W.2d 608, 613 (N.D.1993). If the defendant fails to demonstrate that the evidence was favorable to him, there is no *Brady* violation. *See Goulet*, 1999 ND 80, ¶ 15, 593 N.W.2d 345.

[¶ 11] Ramstad has failed to present any evidence that the undisclosed materials would have been exculpatory or would have called into question the accuracy of the breath analyzer. Under these circumstances, Ramstad has failed to demonstrate a *Brady* violation.

[¶ 12] Ramstad argues that his expert was denied the opportunity to examine these materials before trial, and therefore could not render an opinion whether the records would have called into question the accuracy of the test results. Ramstad could have presented a post-trial affidavit from the expert, in conjunction with a motion for a new trial, if the undisclosed evidence proved to be exculpatory or impeaching. Failure to disclose *Brady* material is a due process violation, and may provide the basis for a new trial. *See Sievers*, 543 N.W.2d at 495–97; *State v. Anderson*, 336 N.W.2d 123, 128–29 (N.D.

1983); 26 James Wm. Moore et al., *Moore's Federal Practice* § 633.03[6] (3d ed.2002). The due process clause, through *Brady,* is not implicated where the evidence is not "plainly" favorable to the defendant, and it is merely speculative whether the evidence might have been exculpatory or valuable for impeachment. *See Steffes,* 500 N.W.2d at 613. In raising a *Brady* challenge, it was incumbent upon Ramstad to supplement the record if necessary to establish that the undisclosed materials were in fact favorable to him.

[¶ 13] In addition, a defendant alleging a *Brady* violation must show that he could not have obtained the undisclosed evidence with reasonable diligence. *Goulet,* 1999 ND 80, ¶ 15, 593 N.W.2d 345; *Sievers,* 543 N.W.2d at 496. We have clearly stated that "[t]he *Brady* rule does not apply to evidence the defendant could have obtained with reasonable diligence." *Sievers,* at 496; *see also* 25 James Wm. Moore et al., *Moore's Federal Practice* § 616.06[4] (3d ed.2002). The materials sought in this case were public records, readily obtainable through the State Toxicologist's office. Ramstad has failed to provide any reason why he could not, with reasonable diligence, have obtained these materials on his own.

[¶ 14] We conclude Ramstad has failed to demonstrate the City's failure to disclose these materials constituted a *Brady* violation.

### III

[¶ 15] Ramstad argues the City's failure to provide the requested documents violated N.D.R.Crim.P. 16, and the trial court abused its discretion in failing to grant a remedy under N.D.R.Crim.P. 16(d)(2).

[¶ 16] Rule 16, N.D.R.Crim.P., governs discovery in criminal cases. Under N.D.R.Crim.P. 16(a)(1)(C) and (D), the prosecution must disclose certain documents and reports of scientific tests upon request by the defendant:

(C) Documents and Tangible Objects. Upon written request of a defendant, the prosecuting attorney shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings, or places, or copies or portions thereof, which are within the possession, custody, or control of the prosecution, and which are material to the preparation of the defendant's defense, or are intended for use by the prosecutor as evidence in chief at the trial, or were obtained from or belong to the defendant.

(D) Reports of Examinations and Tests. Upon written request of a defendant the prosecuting attorney shall permit the defendant to inspect and copy or photograph any results or reports of physical or mental examinations, and of scientific tests or experiments, or copies thereof, within the possession, custody, or control of the prosecution, the existence of which is known, or by the exercise of due diligence may become known, to the prosecuting attorney, and which are material to the preparation of the defense or are intended for use by the prosecutor as evidence in chief at the trial.

Rule 16(d)(2) provides remedies for discovery violations:

(2) *Failure to Comply With Request.* If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this Rule or with an order issued pursuant to this Rule, the court may order that party to permit the discovery or inspection of materials not previously disclosed, grant a continuance, prohibit the party from introducing in evidence the material not dis-

closed, relieve the requesting party from making a disclosure required by this Rule, or it may enter such other order as it deems just under the circumstances. The court may specify the time, place, and manner of making the discovery and inspection and may prescribe such terms and conditions as are just.

[¶ 17] Rule 16 is a discovery rule, not a constitutional mandate, and is designed to further the interests of fairness. *State v. Ensminger*, 542 N.W.2d 722, 723 (N.D.1996); *State v. McNair*, 491 N.W.2d 397, 400 (N.D.1992). Rule 16, N.D.R.Crim.P., is derived from Fed. R.Crim.P. 16. *See Ensminger*, at 723. When a state rule is derived from a corresponding federal rule, we will consider the federal courts' interpretation of the federal rule as persuasive authority when construing our rule. *E.g., Matrix Props. Corp. v. TAG Invs., Inc.*, 2002 ND 86, ¶ 13, 644 N.W.2d 601; *City of Dickinson v. Lindstrom*, 1998 ND 52, ¶ 11, 575 N.W.2d 440; *Ensminger*, at 723. Upon proof of a discovery violation under N.D.R.Crim.P. 16, the trial court has discretion in applying a remedy under N.D.R.Crim.P. 16(d)(2), and we will not disturb its decision absent an abuse of discretion. *See Ensminger*, at 723.

[¶ 18] The City does not dispute that the documents requested by Ramstad were material to the preparation of his defense and that Ramstad was entitled to copies of the documents. The City contends, however, that it had no duty to provide the documents because (1) it had already disclosed the entire contents of the prosecutor's file; (2) the cover letter sent with the previously disclosed materials advised Ramstad to contact the prosecutor's office if he had other questions or needed additional information; and (3) Ramstad

could have obtained the documents himself from the State Toxicologist's office.

[¶ 19] The City contends that it fully complied with N.D.R.Crim.P. 16 by providing a copy of the prosecutor's entire file to Ramstad. We have previously cautioned that, while we may approve of an "open file" policy by prosecutors, such a policy does not automatically ensure compliance with N.D.R.Crim.P. 16. *See Ensminger*, 542 N.W.2d at 724 n. 1. Generally, Rule 16 requires the prosecution to also disclose requested documents in the possession of other governmental agencies which participated in the investigation of the defendant or have otherwise cooperated with the prosecution. *See United States v. Santiago*, 46 F.3d 885, 893–94 (9th Cir.1995); *United States v. Bryan*, 868 F.2d 1032, 1036 (9th Cir.1989); *United States v. Jensen*, 608 F.2d 1349, 1357 (10th Cir.1979); 25 James Wm. Moore et al., *Moore's Federal Practice* § 616.05[1][e] (3d ed.2002). Limiting application of Rule 16 to materials in the actual possession of the prosecution "unfairly allows the prosecution access to documents without making them available to the defense." *Bryan*, at 1036 (quoting *United States v. Robertson*, 634 F.Supp. 1020, 1025 (E.D.Cal.1986), *aff'd*, 815 F.2d 714 (9th Cir.1987)).

[¶ 20] We agree with the rationale of the court in *Lawyer Disciplinary Bd. v. Hatcher*, 199 W.Va. 227, 483 S.E.2d 810, 815 (1997), in which the court noted that "the existence of an 'open file policy,' ... is not enough, of itself, to excuse a prosecutor's failure to disclose exculpatory evidence" under W. Va. R.Crim. P. 16. Quoting *State v. Hall*, 174 W.Va. 787, 329 S.E.2d 860, 863 (1985), the court concluded: "It is not enough for the prosecution to simply say that he provided the defense all evidence he chose to put in the file." *Hatcher*, at 815–16.

[¶ 21] We have previously indicated that an "open file" policy "does not abrogate or dilute the requirement that prosecutors disclose evidence" requested under N.D.R.Crim.P. 16. *See Ensminger,* 542 N.W.2d at 724 n. 1. We conclude that the prosecution's disclosure of its "entire file" did not abrogate its duty to provide requested documents which the prosecution had access to and which were in the possession of a state agency which provided assistance to the prosecution. There is no dispute that the State Toxicologist's office provides assistance in the prosecution of driving under the influence cases. Nor is there any question that the prosecution had access to the requested documents; the City provided the documents to Ramstad within hours after he moved to suppress the results of the breathalyzer test. Under these circumstances, the prosecution's disclosure of its "entire file" did not satisfy its duty to provide discovery under N.D.R.Crim.P. 16.

■ [¶ 22] The City next claims it had no duty to provide the requested documents because it advised Ramstad it was providing its entire file and he could contact the prosecutor's office if he had any other questions or needed additional information. The City contends that, if Ramstad wanted materials beyond these contained in the disclosed prosecutor's file, he should have contacted the prosecutor's office long before the beginning of trial. In essence, the City is saying if a defendant *really* wants the material he previously requested, he must ask for it a second time. Rule 16 contains no such requirement. Nor does the Rule envision allowing the prosecution to provide some of the requested documents, but dispensing with other requests by merely advising the defendant to contact the prosecution if he wants the remaining requested materials. Ramstad made a detailed request for specific documents, and the City had a duty under N.D.R.Crim.P. 16 to disclose those documents.

[¶ 23] Finally, the City argues it had no duty to provide the requested documents because Ramstad could have obtained them on his own from the State Toxicologist's office. The language of N.D.R.Crim.P. 16 contains no exception for documents which are otherwise available to the defendant. The prosecution's suggestion that it had no duty to provide requested documents to the defendant if he had other means to obtain them "falls far short of compliance with" Rule 16. *United States v. Long,* 817 F.Supp. 79, 80 (D.Kan.1993).

[¶ 24] The City contends *State v. Sievers,* 543 N.W.2d 491 (N.D.1996), and *State v. Thomas,* 420 N.W.2d 747 (N.D.1988), support its assertion that the prosecution has no duty under N.D.R.Civ.P. 16 to provide materials which are otherwise available to the defendant. *Sievers* was a *Brady* case and did not address N.D.R.Crim.P. 16. In *Thomas,* the Court concluded the prosecution *had* violated N.D.R.Crim.P. 16 by failing to furnish requested documents relating to the chemical testing device in an "actual physical control" case. *See Thomas,* at 751–52. Availability of the documents to the defendant was considered relevant in determining whether the defendant had been prejudiced by the discovery violation, which may affect whether a sanction under N.D.R.Crim.P.16(d)(2) is appropriate. *Thomas,* at 752. *Thomas* does not suggest that a prosecutor has no duty to provide documents properly requested under N.D.R.Crim.P. 16 if the documents are otherwise available to the defendant, but only that availability may be relevant in determining sanctions under N.D.R.Crim.P. 16(d)(2). We conclude the

City violated N.D.R.Crim.P. 16 when it failed to disclose the requested documents.

[¶ 25] Having established a violation of N.D.R.Crim.P. 16, the next question is whether the defendant suffered substantial prejudice due to the violation. If a discovery violation is not of a constitutional magnitude, it is reversible error only upon a showing that the defendant has been denied substantial rights. *State v. Ebach*, 1999 ND 5, ¶ 21, 589 N.W.2d 566; *State v. McNair*, 491 N.W.2d 397, 400 (N.D.1992). No substantial rights are affected when the defendant was not significantly prejudiced by the discovery violation. *Ebach*, at ¶ 21; *McNair*, at 400.

[¶ 26] If the defendant fails to show he was significantly prejudiced by a discovery violation, a trial court's failure to exclude evidence or impose other sanctions under N.D.R.Crim. P. 16(d)(2) does not constitute an abuse of discretion. *See Ebach*, 1999 ND 5, ¶¶ 21–23, 589 N.W.2d 566; *State v. Ensminger*, 542 N.W.2d 722, 723–24 (N.D.1996); *State v. Zimmerman*, 516 N.W.2d 638, 641 (N.D.1994); *McNair*, 491 N.W.2d at 400. We have previously noted a defendant is in a weak position to assert prejudice from the prosecution's failure to produce requested documents or other materials under N.D.R.Crim.P. 16 when the defendant had other available means to obtain the requested material. *See Ebach*, at ¶ 23; *McNair*, at 400; *Thomas*, 420 N.W.2d at 752; *State v. Martin*, 391 N.W.2d 611, 614–15 (N.D.1986).

[¶ 27] Ramstad could have at any time readily obtained the requested documents from the State Toxicologist's office. Furthermore, Ramstad has still failed to make any showing that the requested documents would have called into question the accuracy of the breathalyzer or the results of his chemical test.[1] Under these circumstances, Ramstad has failed to demonstrate he was significantly prejudiced by the discovery violation, and we conclude the trial court did not abuse its discretion.

[¶ 28] While we do not believe either the prosecution or defense would place their case or client at risk to prove a point, in view of our prior caution in *Ensminger* that the "open file" policy is not the end of the prosecution's obligation under N.D.R.Crim.P. 16, and in view of the ready availability of the documents in the State Toxicologist's office to the defense, this case has all the indications of an intransigent showdown.

[¶ 29] Although we have affirmed the judgment of conviction because there is no significant prejudice, we add an additional warning to prosecutors in this state. This is not the first instance in which the prosecution has argued it has no duty to provide discovery under N.D.R.Crim.P. 16 when the requested information is otherwise available to the defendant from other sources. *See State v. Fitterer*, 2002 ND 170, ¶ 2, 652 N.W.2d 908. Our opinion in this case places all prosecutors on notice that N.D.R.Crim.P. 16 does not allow them to shift the burden of obtaining materials in the hands of other governmental agencies to the defendant. We further caution that, although a showing of prejudice is generally required before reversing a criminal conviction for a discovery violation, reversal for conduct which is merely potentially prejudicial may

---

1. Justice Maring in her special concurrence urges that, where a failure to disclose requested information violates Rule 16, a continuance is the preferred remedy. Here, however, the trial court found no violation and therefore any remedy, including a continuance, would not have been granted. If the trial court is unsure whether the requested information is exculpatory, the better practice is to order a continuance so that the defendant may examine the materials to determine if they are exculpatory.

be warranted as a sanction for institutional noncompliance and systemic disregard of the law if the conduct is commonplace. *See Zimmerman*, 516 N.W.2d at 641; *Madison v. North Dakota Dep't of Transp.*, 503 N.W.2d 243, 246 (N.D.1993); *State v. Steffes*, 500 N.W.2d 608, 613–14 n. 5 (N.D.1993).

## IV

[¶ 30] We conclude the City's failure to disclose the requested documents did not violate *Brady* and, although the City's conduct violated N.D.R.Crim.P. 16, the trial court did not abuse its discretion in denying Ramstad's motions for suppression or for a continuance. We affirm the judgment of conviction.

[¶ 31] CAROL RONNING KAPSNER, and WILLIAM A. NEUMANN, JJ., concur.

MARING, Justice, concurring specially.

[¶ 32] I concur specially because I am of the opinion that when Rule 16, N.D.R.Crim.P., has been violated, a continuance of trial is preferred in the context of this case. *See State v. McNair*, 491 N.W.2d 397, 400 (N.D.1992) (stating that a trial court should use the least severe sanction that will rectify the prejudice of a discovery violation). Here, the court refused to grant a continuance. The remedy the majority proposes for Ramstad's dilemma is for him to establish prejudice by bringing a motion for a new trial supported by an expert's affidavit stating the evidence that was not provided is exculpatory evidence.

[¶ 33] On May 14, 2002, Ramstad served a motion to suppress the evidence because of the City's failure to provide the discovery materials. On that same day, the City faxed the discovery materials to Ramstad. At the conclusion of the trial on May 15, 2002, the jury returned a verdict of guilty and a judgment of conviction was entered. A motion for a new trial based on newly discovered evidence must be brought within 30 days of the discovery of the facts on which the motion is made. N.D.R.Crim.P. 33(b). Theoretically, Ramstad had 30 days to engage his expert to review the evidence provided on May 14, 2002, to obtain an affidavit stating that it was exculpatory evidence and to bring his motion. However, N.D.R.App.P. 4(b) requires a notice of appeal to be filed within 10 days after entry of a judgment of conviction.[2] A motion for a new trial based on newly discovered evidence will toll the time for appeal if the motion is made within 10 days after entry of the judgment of conviction. N.D.R.App.P. 4(b)(1). If the appeal is already pending when the motion is made, the Court may grant the motion only on remand of the case to the trial court. N.D.R.Crim.P. 33(b). In all practicality, Ramstad must bring his motion for a new trial within 10 days after entry of the judgment of conviction or be faced with having to file his notice of appeal and later asking our Court to remand his case back to the trial court to hear his motion for a new trial based on newly discovered evidence. Ten days is not much time to hire an expert and obtain review of the materials, to prepare a report detailing how the material is exculpatory, and to prepare and serve a motion for a new trial. The end result is potentially a needless appeal and a second trial

---

**2.** Our Court has approved an amendment to Rule 4(b)(1)(A), N.D.R.App.P., effective March 1, 2003: "In a criminal case, a defendant's notice of appeal must be filed with the clerk of district court within 30 days after the entry of the judgment or order being appealed." This will alleviate some of my concerns about the procedure proposed by the majority, but I still favor a continuance as the appropriate remedy for the instant circumstances.

of the issues. The more economical and sensible resolution to the situation in this case is a continuance of the trial. This would allow time for the party disadvantaged by the late compliance with discovery to prepare accordingly. I encourage serious consideration of continuances under circumstances such as these.

[¶ 34] For this reason, I concur specially.

[¶ 35] Mary Muehlen Maring

SANDSTROM, Justice, concurring specially.

[¶ 36] I agree with the result reached by the majority and write separately to emphasize that in this case the State Toxicologist's office, like the Highway Patrol in *State v. Fitterer*, 2002 ND 170, ¶ 2, 652 N.W.2d 908, was by law and in fact closely involved in the development of the criminal case. On the other hand, the defense in this case submitted a vast discovery request containing some 146 questions and subparts, much of it bearing little relation to the requirements of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), or Rule 16 of the North Dakota Rules of Criminal Procedure.

[¶ 37] Most of the provisions of our Rule 16 come from the corresponding Federal Rules of Criminal Procedure. N.D.R.Crim.P. 16, Explanatory Note. "When a procedural rule is patterned on a Federal rule, the Federal courts' interpretation of the Federal rule is highly persuasive." *State v. Meier*, 422 N.W.2d 381, 386 (N.D.1988) (citing *State v. Valgren*, 411 N.W.2d 390 (N.D.1987)).

[¶ 38] There is no doubt that there is a special responsibility for agencies involved in the investigation and preparation of the prosecution case. *United States v. Bryant*, 439 F.2d 642, 650 (D.C.Cir.1971) (The duty of disclosure affects not only the prosecutor but investigative agencies.). The opinion of the Court correctly points out that the duty to disclose cannot be limited by what the prosecutor chooses to place in the file. *United States v. Scruggs*, 583 F.2d 238, 242 (5th Cir.1978) ("Nor is the government excused from its obligation by the fact that the documents were in the possession of the FBI prior to trial." (citations omitted)).

[¶ 39] The defense, for its part, submitted what appear to be highly burdensome interrogatories outside the scope of *Brady* or Rule 16. *See United States v. Haldeman*, 559 F.2d 31, 75 (D.C.Cir.1976) (The "discovery motion, aptly described by the District Court as a 'sweeping and broadly phrased' endeavor to secure 'a tremendous array of materials,' ignored Rule 16(b)'s admonition of reasonableness." (footnotes omitted)); *United States v. Ross*, 511 F.2d 757, 762 (5th Cir.1975) (The " 'measure of discovery permitted by the Rules of Criminal Procedure is not intended to be as broad as in a civil case.' " (citations omitted)); *United States v. Marshall*, 532 F.2d 1279, 1285 (9th Cir.1976) ("The requirement of materiality when seeking discovery under Rule 16(b) signifies that the pretrial disclosure of the evidence in question must enable the accused to substantially alter the quantum of proof in his favor." (citations omitted)). To the extent that the defense's discovery requests—including the four quoted in ¶ 3—are questions to be answered, as opposed to documents or objects to be disclosed and made "available for inspection, copying, or photographing," they are outside the scope of Rule 16. N.D.R.Crim.P. 16(a). Perhaps the defense achieved the strategic result it was hoping for, non-response by the prosecutor. Both the defense and prosecutor are reminded that Rule 16 provides its own remedies for non-compliance with appropriate requests and for protection from unreasonable and inappropriate requests:

(d) Regulation of Discovery.

(1) Protective and Modifying Orders. Upon a sufficient showing the court at any time may order that the discovery or inspection be denied, restricted, or deferred or make such other order as is appropriate. Upon motion by a party, the court may permit the party to make the showing, in whole or in part, in the form of a written statement to be inspected by the court in camera. If the court enters an order granting relief following a showing in camera, the entire text of the party's statement must be sealed and preserved in the records of the court to be made available to the appellate court in the event of an appeal. (2) Failure to Comply With Request. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this Rule or with an order issued pursuant to this Rule, the court may order that party to permit the discovery or inspection of materials not previously disclosed, grant a continuance, prohibit the party from introducing in evidence the material not disclosed, relieve the requesting party from making a disclosure required by this Rule, or it may enter such other order as it deems just under the circumstances. The court may specify the time, place, and manner of making the discovery and inspection and may prescribe such terms and conditions as are just.

N.D.R.Crim.P. 16.

[¶ 40] The rule does not contemplate strategic gamesmanship by either side; it requires fair and reasonable disclosure to serve the ends of justice.

[¶ 41] Dale Sandstrom