2011 ND 127

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Charles BLUNT, Defendant and Appellant.**

No. 20100308.

Supreme Court of North Dakota.

June 28, 2011.

Rehearing Denied August 23, 2011.

Lloyd Clayton Suhr, Assistant State's Attorney, Bismarck, N.D., for plaintiff and appellee.

Michael Ray Hoffman, Bismarck, N.D., for defendant and appellant.

SANDSTROM, Justice.

[¶ 1]   Charles Blunt appeals from a district court order denying his motion for a new trial.  Blunt argues the court erred in denying his motion for a new trial, because the State violated discovery rules.  Although we conclude the State likely violated the discovery rules, a careful review of the entire record reflects that the information contained in the apparently undisclosed documents was contained in other documents provided to Blunt.  Concluding that Blunt has not established he was prejudiced by the apparent discovery violations, we affirm.

I

[¶ 2]   Blunt was the Executive Director of Workforce Safety and Insurance ("WSI") from 2004 to 2007.  The State Auditor's Office conducted a performance review of WSI in 2006, and the Auditor's report questioned the use of public funds at WSI. As a result of the Auditor's report, Blunt was charged with two counts of misapplication of entrusted property in violation of N.D.C.C. § 12.1–23–07(1).

[¶ 3]   Count I charged Blunt with a class B felony for misapplying more than $10,000 in WSI funds for gift certificates given to WSI employees;  food, beverages, flowers, balloons, decorations, costume rentals, ornaments, and gifts for WSI meetings;  food and convention expenses provided to legislators;  payment of sick leave;  and failure to recoup relocation expenses from a WSI executive.  *See* N.D.C.C. § 12.1–23–07(2)(a) (misapplication of entrusted property exceeding $10,000).  Count I included a claim that WSI had a legal obligation to attempt to recoup $7,500 in relocation expenses from Dave Spencer, a WSI executive.  Spencer was sent a letter when he was offered a position at WSI informing him WSI would reimburse his relocation expenses, but he would have to pay back a portion of the expenses if he voluntarily resigned within the first two years.  Spencer was reimbursed for over $15,000 in relocation expenses when he began his employment with WSI. He resigned less then two years after his employment began.  The State claimed WSI had a legal obligation to recover half of the relocation expenses because Spencer resigned within the first two years of his employment and Blunt failed to recoup the expenses.  Count II

charged Blunt with a class C felony for misapplying more than $500 in WSI funds for illegal bonuses paid to three high-ranking WSI executives. *See* N.D.C.C. § 12.1–23–07(2)(b) (misapplication of entrusted property exceeding $500 but less than $10,000).

[¶ 4] A jury trial was held and the jury found Blunt guilty on Count I and not guilty on Count II. The court entered an order deferring imposition of sentence. Blunt appealed the order, and this Court affirmed. *See State v. Blunt*, 2010 ND 144, 785 N.W.2d 909.

[¶ 5] Shortly after the appeal, the State filed a "Motion in Litis Contestatio"[1] requesting the district court decide whether the State committed discovery violations under N.D.R.Crim.P. 16 or violated due process under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), based on allegations Blunt made after the trial. Blunt responded to the State's motion and moved for a new trial or for Count I to be dismissed. Blunt did not dispute the State's claim that it did not violate *Brady*, but claimed the State violated N.D.R.Crim.P. 16 by failing to disclose documents that contained information about the Spencer relocation expenses. Blunt claimed the State failed to provide a memorandum about Spencer's resignation and the relocation expenses written by Jason Wahl, who is a performance auditor with the State Auditor's Office and was a witness at the trial; a report from Bureau of Criminal Investigations' Special Agent Mike Quinn, which included a report from an interview of Wahl; and a copy of a "C99" document prepared by the State Auditor's Office for the audit of WSI with handwritten notes about Spencer's resignation and the relocation expenses.

[¶ 6] The district court denied Blunt's motion for a new trial. The court ruled there was no *Brady* or N.D.R.Crim.P. 16 violation and Blunt did not suffer substantial prejudice warranting a dismissal or a new trial if there was a discovery violation. Blunt appealed.

[¶ 7] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal was timely under N.D.R.App.P. 4(b). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 29–28–06.

## II

[¶ 8] Blunt argues the State violated N.D.R.Crim.P. 16 because it failed to provide him with copies of the C99 document with the handwritten notes, the memorandum from Wahl to the prosecutor, and the Quinn investigation reports. He contends the discovery violations prevented him from properly preparing his defense and the court erred by failing to order a new trial or dismissing Count I.

[¶ 9] Rule 16, N.D.R.Crim.P., governs discovery of evidence in criminal cases. *City of Grand Forks v. Ramstad*, 2003 ND 41, ¶ 16, 658 N.W.2d 731. Under N.D.R.Crim.P. 16(a) and (f), the prosecution must furnish a defendant with statements made by prosecution witnesses and copies of any documents or data within the prosecution's possession, custody, or control if the item is material to preparing a defense, the prosecution intends to use the item in its case-in-chief at trial, or the item

---

**1.** There is no basis in North Dakota statute, rule, or caselaw for a "motion in litis contestatio." *Black's Law Dictionary* explains that "litis contestatio" is a Roman Law "final agreement of the parties to a suit on the formula the praetor would issue to the judex." *Black's Law Dictionary* 1017 (9th ed.2009). The district court did not decide the State's motion, and instead decided Blunt's motions.

belongs to or was obtained from the defendant. The rule also requires the prosecution to disclose requested documents in the possession of other government agencies and is not limited to the materials actually in the prosecution's possession. *State v. Sauer*, 2011 ND 47, ¶ 8, 795 N.W.2d 331.

[¶ 10] If the prosecution fails to comply with N.D.R.Crim.P. 16 or an order issued under the rule, the court may apply one of the remedies listed in N.D.R.Crim.P. 16(d)(2), including entering any order that is just under the circumstances. The court has discretion in applying a remedy when a violation of the rule has been shown, and the court's decision will not be reversed on appeal absent an abuse of discretion. *State v. Addai*, 2010 ND 29, ¶ 41, 778 N.W.2d 555. A court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, when it misinterprets or misapplies the law, or when its decision is not the product of a rational mental process leading to a reasoned determination. *City of Fargo v. Levine*, 2008 ND 64, ¶ 5, 747 N.W.2d 130.

[¶ 11] " 'Rule 16 is not a constitutional mandate, and a violation of the rule results in a constitutionally unfair trial only when "the barriers and safeguards are so relaxed or forgotten the proceeding is more of a spectacle or a trial by ordeal than a disciplined contest." ' " *Addai*, 2010 ND 29, ¶ 42, 778 N.W.2d 555 (quoting *State v. Roerick*, 557 N.W.2d 55, 56 (N.D. 1996)). The court's decision on a discovery violation is reversible error only if the defendant was denied a substantial right. *Ramstad*, 2003 ND 41, ¶ 25, 658 N.W.2d 731. A substantial right has not been denied unless the defendant was significantly prejudiced by the violation. *Id.* "If the defendant fails to show he was significantly prejudiced by a discovery violation, a [district] court's failure to exclude evidence or impose other sanctions under N.D.R.Crim.P. 16(d)(2) does not constitute an abuse of discretion." *Id.* at ¶ 26.

[¶ 12] Here Blunt served the State with a discovery request. It included a request that the State allow him to inspect and copy or photograph any papers or documents in the prosecution's possession, custody, or control that were material to preparing his defense or that the prosecutor intended to use as evidence at trial. He also requested a list of the prosecution's witnesses and any statements the witnesses made.

[¶ 13] There was no evidence the State disclosed copies of the Wahl memorandum and Quinn's investigation report. The Wahl memorandum was a memo from Wahl to the prosecutor providing a summary of meetings and discussions he had with WSI executives about Spencer and the relocation expenses. Quinn's investigation report included notes from a telephone conversation he had with Wahl about Spencer's relocation expenses. Wahl was listed as a prosecution witness, and the State was required to disclose these documents under N.D.R.Crim.P. 16(a)(1)(D) and (f)(1). Blunt claims the State failed to disclose a copy of the C99 document that contained handwritten notes, but he concedes the State disclosed a copy that did not contain the handwritten notes, and there was evidence Blunt had a copy of the C99 with the handwritten notes prior to trial. The State contends Blunt could have found the documents if he had taken advantage of the State's open file policy; however, this Court has said "an 'open file' policy 'does not abrogate or dilute the requirement that prosecutors disclose evidence' requested under N.D.R.Crim.P. 16." *Ramstad*, 2003 ND 41, ¶ 21, 658 N.W.2d 731 (quoting *State v. Ensminger*, 542 N.W.2d 722, 724 n. 1 (N.D.1996)). We conclude the

State likely violated N.D.R.Crim.P. 16 by failing to disclose the requested documents.

[¶ 14] Although for the purposes of this opinion the State violated discovery rules, Blunt has failed to show he was significantly prejudiced by the violations. Blunt claims Wahl was the State's key witness on the issue of Spencer's relocation expenses and his testimony supported the State's claim that Blunt's decision not to recoup the relocation expenses was contrary to law and the opinion of the Attorney General's office. Blunt contends the Wahl memo and Quinn investigation report were critical to his case because he could have used the documents to show there was not probable cause for alleging illegality as to the Spencer relocation expenses and to help the jury understand all of the facts, because he could not effectively counter the State's evidence without these documents. He contends it is not clear that the jury would have found him guilty of Count I if it had had all the information about the relocation expenses, because the State alleged Blunt should have attempted to recover $7,500 for the relocation expenses and without the relocation expenses the jury may not have found the value of the misapplied property exceeded $10,000.

[¶ 15] The Wahl memo is dated November 8, 2007, and contained information about Spencer's resignation, including why the auditors began questioning whether WSI should seek repayment of Spencer's relocation expenses and why they decided not to make a recommendation about the expenses. The memo states Blunt was not forthcoming with information about Spencer's decision to leave his position at WSI, the auditors were initially informed Spencer "resigned," and they began to question whether Spencer was required to repay the relocation expenses, but Blunt later provided new information about Spencer's

decision to leave and made it appear the decision was not voluntary. The memo states, "Due to the new information provided by Mr. Blunt, we determined, in consultation with a representative of the Attorney General's Office, there was not a voluntary resignation so it was determined to drop the recommendation we had drafted."

[¶ 16] Quinn's investigation report states that he spoke with Wahl on November 8, 2007, about the relocation expenses:

The purpose of the phone call was to discuss moving expenses that had been paid to Spencer when Spencer was initially hired by WSI. Wahl stated that if Spencer resigned, Spencer would have to pay back the moving expenses, but if Spencer had been forced out or fired, that Spencer would not have to pay back the expenses. Wahl stated that moving expenses were a "grey area" and that Wahl was not sure if non payment would violate a state statute. Wahl stated that Wahl had never really seen this issue before, so is not clear on the legality of it. Wahl stated that since Spencer's resignation was non voluntary, that Wahl felt it was a "non issue" for the auditor's office.

[¶ 17] Blunt did not request an evidentiary hearing on his motion for a new trial, and he did not submit any affidavits to support his claims. It is not clear how the memo or investigation report would have changed Wahl's testimony. During the trial, Blunt's attorney asked Wahl about Spencer's resignation:

Q. Mr. Wahl, when I ask you—I want to ask you a question about Mr. David Spencer.

If his leaving WSI was involuntary, then your opinion as a state auditor is that the recoupment of relocation or moving expenses would be a moot point. Correct?

A. I guess, that would relate to a legal question, so we would present the information that we had available to us at the time and contact our legal counsel, which is the Office of the Attorney General.

Q. Well, you have already given testimony regarding the meeting with Mr. Blunt and Ms. Jodi Bjornson October 24, 2006. Right?

A. Correct.

. . . .

Q. And you specifically state to Mr. Blunt and Ms. Bjornson that if Mr. Spencer's leaving WSI was involuntary, then the recoupment of relocation expenses becomes a moot point. Correct?

A. Yes.

Wahl also testified that the relocation expenses were not included in the final published audit. Wahl did not testify that Spencer's resignation was voluntary and that he believed WSI had a legal obligation to seek repayment of the relocation expenses. Absent the presentation of any evidence to support Blunt's claims, it is not clear how Wahl's testimony would have changed.

[¶ 18] Furthermore, Blunt possessed but did not use other evidence that contained the same information about the State Auditor's decision on the relocation expenses. The C99, which is part of a document from the State Auditor's Office about the WSI audit, addressed the issue of whether Blunt had an obligation to attempt to recover any of the funds WSI paid to Spencer to reimburse his relocation expenses and said, "Eventually we were told (and convinced) the separation was other than voluntary." There was evidence, and Blunt's attorney conceded, Blunt had a copy of the C99 with the handwritten notes prior to trial. The handwritten notes stated, "based on discussions with Attorney General's Office de-termination was made the separation was other than voluntary; letter offering position requires 50% pay back if leave voluntarily in first 2 years." Blunt did not use the information in either version of the C99 during the trial. He claims he did not use the C99 because there was no context to it, he did not know when it was created, and it might "open up a can of worms" and could lead to testimony that he lied to the auditors about Spencer's resignation. The Wahl memo also contained information that could raise similar issues. The memo included statements that Blunt withheld information about Spencer's resignation from the auditors and knew his actions were wrong. On this record, it is not clear the disclosure of the Wahl memo would have affected Wahl's testimony.

[¶ 19] There was other evidence and testimony presented during the trial that Spencer's decision to resign was not voluntary. Spencer testified Blunt told him he had to resign or he would be fired and he resigned shortly thereafter. Spencer testified his resignation was not voluntary, Blunt told him he had to leave, and he would have continued working at WSI if Blunt had not told him to leave. Jodi Bjornson, WSI's general counsel, testified she was involved in discussions about Spencer's employment, there were problems with how he treated staff, he was potentially creating liability issues for WSI, and she told Blunt Spencer had to leave. Bjornson testified she recommended WSI not seek repayment of Spencer's relocation expenses. James Long, Chief of Support Services at WSI, testified Blunt told him the employees under Spencer's supervision told Blunt Spencer had to leave or they would. Long testified he recommended Blunt fire Spencer and testified Blunt knew Spencer had anger management problems. Long testified Blunt told him he knew he needed

to fire Spencer but he did not want to leave Spencer "on the lurch." Billi Peltz, Human Resources Manager at WSI, testified Spencer was alienating his staff and she told Blunt Spencer needed to leave and Blunt agreed.

[¶ 20] Although an "open file policy" does not abrogate the requirement that evidence be disclosed, it is a factor that may be considered in deciding whether a defendant was significantly prejudiced by a discovery violation. *See Addai*, 2010 ND 29, ¶ 44, 778 N.W.2d 555. We have said, "[A] defendant is in a weak position to assert prejudice from the prosecution's failure to produce requested documents or other materials under N.D.R.Crim.P. 16 when the defendant had other available means to obtain the requested material." *Ramstad*, 2003 ND 41, ¶ 26, 658 N.W.2d 731. The State claims the documents were in its file and Blunt could have obtained the C99 with the handwritten notes, the Wahl memo, and Quinn's investigation report if he had availed himself of the open file policy.

[¶ 21] Blunt failed to establish he was significantly prejudiced by the State's failure to disclose the requested documents. We conclude the district court did not abuse its discretion by denying Blunt's motion for a new trial.

### III

[¶ 22] We affirm.

[¶ 23] GERALD W. VANDE WALLE, C.J., WICKHAM CORWIN, D.J., DANIEL J. CROTHERS, and MARY MUEHLEN MARING, JJ., concur.

[¶ 24] The Honorable WICKHAM CORWIN, D.J., sitting in place of KAPSNER, J., disqualified.