# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2020 ND 97

State of North Dakota,                                        Plaintiff and Appellant

    v.

Stanley James Kolstad,                                        Defendant and Appellee

## No. 20190228

Appeal from the District Court of Grand Forks County, Northeast Central Judicial District, the Honorable Donald Hager, Judge.

REVERSED AND REMANDED.

Opinion of the Court by VandeWalle, Justice.

Megan J. Kvasager Essig, Assistant State's Attorney, Grand Forks, ND, for plaintiff and appellant.

David D. Dusek, Grand Forks, ND, for defendant and appellee.

**VandeWalle, Justice.**

[¶1] The State of North Dakota appealed from a district court order dismissing a criminal charge of refusing to submit to a chemical breath test. We reverse and remand.

I

[¶2] In December 2018, Officer Nelson of the University of North Dakota Police Department conducted a traffic stop of Stanley Kolstad for suspicion of driving under the influence. Kolstad performed field sobriety tests and a preliminary breath test (PBT). Prior to performing the PBT, Kolstad informed Nelson that he had asthma. Nelson testified he was unable to obtain a PBT result because Kolstad was filling his cheeks with air while performing the test. Kolstad was arrested for DUI and refusing to submit to a chemical test.

[¶3] Kolstad was transported to the UND police station to be given an Intoxilyzer breath test. Prior to the Intoxilyzer test, Nelson read Kolstad the implied consent advisory. But, because Nelson was not a certified operator of the Intoxilyzer machine, Officer Waltz conducted the test. Prior to the test, Kolstad informed Waltz he had asthma. The Intoxilyzer test results were deficient. Waltz testified Kolstad was not providing enough air for the test machine to provide a valid result.

[¶4] Kolstad was charged with driving under the influence and refusing to submit to a chemical test. Kolstad's counsel made a discovery request to the State under N.D.R.Crim.P. 16. In the request, Kolstad's counsel requested copies of any audio or video recordings taken by police officers. Kolstad's counsel also requested the State inform him whether any sound or video recordings taken of Kolstad were subsequently "altered, edited, destroyed, or discarded." The State provided Kolstad's counsel with dash camera footage from Nelson's police car that had been taken at the scene of the arrest, but the State did not provide any body camera footage from either Nelson or Waltz.

[¶5]   At trial, Nelson testified he read Kolstad the implied consent advisory from a card issued by the UND police department to all UND police officers. Nelson could not recall what version of the implied consent advisory was on the card at the time, but he testified it would be the same advisory that was on the cards issued to all other UND police officers. Nelson testified that his body camera had been recording during Kolstad's performance of the field sobriety tests, during the PBT, while Nelson read Kolstad the implied consent advisory prior to the Intoxilyzer test, and while Kolstad performed the Intoxilyzer test. However, Nelson testified that because of technology problems UND was having with its servers at the time, his body camera footage was inadvertently deleted when he attempted to upload it to the servers. Because of this malfunction, Nelson was unable to recover or view his body camera footage. Waltz also testified that his body camera was recording for a brief time before Kolstad performed the Intoxilyzer test. When asked by Kolstad's counsel if his body camera footage was successfully uploaded to the server, Waltz replied that it was.

[¶6]   Upon learning that Waltz's body camera footage was successfully uploaded, Kolstad's counsel moved to dismiss the case because the State did not provide any body camera footage in discovery as requested. Outside the presence of the jury, the court heard argument from the defense and the State. The defense argued that in its discovery request, it asked for all audio and video recordings taken by police officers and was provided no body camera footage by the State. The defense alleged the body camera footage would have shown the implied consent advisory read by Nelson did not reference urine tests, which the defense contended would be grounds for suppression under *State v. Vigen*, 2019 ND 134, 927 N.W.2d 430. The defense also alleged the footage would have shown whether Kolstad was refusing the test or was unable to perform the test due to his asthma. The defense argued the appropriate remedy was for the alleged discovery violation was dismissal, stating: "For a violation of discovery the remedy is dismissal. Maybe the alternative is a continuance to be able to see what the video says, or whatever. But at this late stage, no, they have to have that provided."

[¶7]  The State asserted it was never in possession of Nelson's or Waltz's body camera footage and was never able to view any of the footage. The State further contended that *Vigen* was inapplicable since it dealt with suppression of a test result and did not apply to refusal. The State argued that trial continue on "and that there be no dismissal or continuance."

[¶8]  Ultimately, the court granted the defense's motion to dismiss. The court stated:

> Unusual situation. Usually doesn't crop up within about the last hour of trial, that there is a video that some witness testified to. Officer Waltz certainly did testify that there was a video; that he had a body cam, which may go to the refusal itself. Court is going to grant the Motion to Dismiss Count II [refusal], because at this late stage it would have been a suppression motion otherwise; that entire test would have been a suppression.

After dismissing the refusal charge, the court took a recess.

[¶9]  Upon returning from the recess, the State made a motion for reconsideration, and additional testimony was taken from Waltz. Waltz testified that even though his body camera footage was successfully uploaded, the footage, like Nelson's, was inadvertently deleted and unable to be viewed because of the technology problems with the UND servers at the time. On cross-examination, Waltz was asked if he ever notified the State that body camera footage had been recorded but was deleted because of technology problems. Waltz replied that he verbally informed the State approximately a week before trial that body camera footage was recorded but was deleted. Waltz further testified that every UND police officer was distributed the same card containing the same implied consent advisory, and at the time of Kolstad's arrest, the implied consent advisory contained in the card only referenced breath tests, not urine tests.

[¶10] The court heard additional argument. The defense argued that had the State disclosed that body camera footage had been recorded but was deleted because of technology problems with the UND servers, the defense had experts readily available to try and recover the deleted footage. The defense

maintained the only remedy for the alleged discovery violation was dismissal. The State again argued it was never in possession of the body camera footage and was never able to view the footage, and that dismissal was not the proper remedy for the alleged discovery violation. The court denied the State's motion for reconsideration, and trial was adjourned until the following day.

[¶11] On the second day of trial, the court clarified that "the ruling to dismiss the charge was based on discovery violations, Rule 16, not as a motion in limine to suppress." The court also offered the following explanation as to why dismissal was appropriate:

> One thing I'm going to say for the record here, it's starting to become an issue with discovery on these body cams, and stuff. Mr. Dusek yesterday argued that the State has, at least, control in some way of evidence, even though it's in the hands of law enforcement. When those discovery responses go out, at that time the State should be—or any party should be contacting their witnesses that may hold that evidence to find out what the availability is. And I think yesterday the statement was, that that didn't happen until a week before trial. I can understand that you don't want to invest a lot of time into your witnesses before you go to trial in the event of a plea agreement. However, in order to respond to discovery, you have to do that. It's not a good practice. It's going to lead to stuff like this, that turned into a circus yesterday. This should have been a very clear-cut thing where we could have had—that's why I pushed getting motions in limine in, because none of this stuff would have come up. You got a jury that should have been here only a day that weren't here. We probably would have only heard one witness. And, actually, the end result would have been, I probably would have given a continuance so that Mr. Dusek would then try to retrieve those body cams. But he had a valid point, that on refusal to test the actual, quote, "refusal behavior" is pretty prejudicial if you can prove otherwise on a tape, especially if you are using a medical excuse for it. Typically, on other things, probably not as much. Officer Nelson's body cam, to me, is not as prejudicial not having it, because you can hear voices on the tape. He was here to testify. He testified fully. I gave both of you an opportunity, before we rested yesterday, for further examination and neither one of you took it. So as far as I'm concerned, all the evidence is in.

[¶12] On appeal the State argues the alleged discovery violation does not rise to a constitutional violation of Kolstad's due process rights, and the district court abused its discretion in dismissing the refusal charge. Kolstad argues the district court's order dismissing the refusal charge is not appealable, and if it is appealable, the court did not abuse its discretion in dismissing the charge.

## II

[¶13] In a criminal action, the State's only right of appeal is expressly granted by statute. *State v. Bernsdorf*, 2010 ND 123, ¶ 5, 784 N.W.2d 126. Section 29-28-07(1), N.D.C.C., allows the State to appeal from "[a]n order quashing an information or indictment or any count thereof." However, "it is well established that the State cannot appeal from an acquittal." *Bernsdorf*, at ¶ 5 (citing *State v. Bettenhausen*, 460 N.W.2d 394, 395 (N.D. 1990)). We have distinguished between an order quashing an information and a judgment of acquittal:

> This question is not controlled by the form of the trial court's ruling. Rather, to determine what constitutes an acquittal, as distinguished from a dismissal quashing the information, we look at the substance of the judge's ruling to determine whether it actually represents a resolution of some or all of the factual elements of the offense charged. If the trial court's decision is based upon legal conclusions rather than a resolution of some or all of the factual elements of the events charged, the ruling amounts to a dismissal or a quashing of the information from which the State has a right to appeal.

*State v. Erickson*, 2011 ND 49, ¶ 7, 795 N.W.2d 375 (internal citations and quotations omitted) (quoting *State v. Deutscher*, 2009 ND 98, ¶ 8, 766 N.W.2d 442).

[¶14] The district court explicitly stated at trial "the ruling to dismiss the charge was based on discovery violations . . . ." The court's order was based on a legal conclusion that the State had committed a discovery violation. The court did not resolve any factual elements of the refusal charge. The order dismissing the refusal charge is appealable.

5

## III

[¶15] The alleged discovery violation by the State raises two issues: (1) whether Kolstad's due process rights were violated as a result of the alleged discovery violation; and (2) whether the district court abused its discretion in dismissing the charge after determining the State committed a discovery violation.

## A

[¶16] Due process issues may be raised when a discovery violation has occurred.

> [T]his Court [has] summarized three categories of cases in which courts "have attempted to analyze an accused's right to due process when prosecutors fail[ed] to provide evidence to the defense which [was] within, or potentially within, their purview." The three categories of cases involving the conduct of the State, which resulted in the loss of evidence, include: "(1) the [S]tate's failure to *collect* evidence in the first instance, (2) the [S]tate's failure to *preserve* evidence once it has been collected, and (3) the [S]tate's *suppression* of evidence which has been collected and preserved."

*State v. Schmidt*, 2012 ND 120, ¶ 12, 817 N.W.2d 332 (emphasis in original) (quoting *State v. Steffes*, 500 N.W.2d 608, 612 (N.D. 1993)). Categories two and three are implicated here.

## 1

[¶17] The second category "involves the failure to *preserve* evidence which has been collected." *Steffes*, 500 N.W.2d at 613. Under the second category, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Id.* (quoting *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988)); *State v. Haibeck*, 2006 ND 100, ¶ 7, 714 N.W.2d 52. "Bad faith, as used in cases involving destroyed evidence or statements, means that the state deliberately destroyed the evidence with the intent to deprive the defense of information; that is, that the evidence was destroyed by, or at the direction of, a state agent

who intended to thwart the defense." *State v. Ostby*, 2014 ND 180, ¶ 15, 853 N.W.2d 556 (quoting *Steffes*, at 613). An act of bad faith on the part of the police is relevant because it leads to an inference that the evidence is exculpatory. *See Steffes*, at 613.

[¶18] Here, there is no evidence of bad faith on the part of Officers Nelson or Waltz, the UND Police Department, or the State. The officers' body camera footage was not deliberately destroyed by Nelson, Waltz, or the State's Attorney to deprive Kolstad of its contents. Even though the body camera footage had been collected, the State did not fail to preserve the evidence in bad faith.

2

[¶19] Category three is "the [S]tate's suppression of evidence which has been collected and preserved." *Schmidt*, 2012 ND 120, ¶ 16, 817 N.W.2d 332. In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the United States Supreme Court held that suppression by the prosecution of evidence favorable to an accused violates due process if the evidence is material to guilt or punishment irrespective of the good faith or bad faith of the prosecution. *City of Grand Forks v. Ramstad*, 2003 ND 41, ¶ 9, 658 N.W.2d 731. "To establish a *Brady* violation, the burden is upon the defendant to show: '(1) the government possessed evidence favorable to the defendant; (2) the defendant did not possess the evidence and could not have obtained it with reasonable diligence; (3) the prosecution suppressed the evidence; and (4) a reasonable probability exists that the outcome of the proceedings would have been different if the evidence had been disclosed.'" *Id.* (quoting *State v. Goulet*, 1999 ND 80, ¶ 15, 593 N.W.2d 345).

[¶20] Evidence is favorable to the defendant if it is exculpatory or because it is impeaching. *Id.* Exculpatory evidence is "[e]vidence tending to establish a criminal defendant's innocence." *Evidence,* Black's Law Dictionary (11th ed. 2019). For purposes of this case, we assume the body camera footage was favorable to the defense.

7

[¶21] Prong two has also been satisfied. Kolstad did not possess the body camera footage, and the only way he could have obtained the footage was by requesting it from the State.

[¶22] Under prong three, the State suppresses evidence when it "collects and preserves evidence, but withholds that evidence when the defendant requests it, or when it otherwise becomes material to the defense." *Steffes*, 500 N.W.2d at 612. Officers Nelson and Waltz collected body camera footage. However, the footage was never preserved because, due to technology problems at the time, it was inadvertently deleted when it was uploaded to the server. The body camera footage was never able to be viewed by Nelson, Waltz, or the State's Attorney. With the body camera footage having been deleted, there was no preserved evidence for the State to suppress. Therefore, prong three has not been satisfied.

[¶23] The State's failure to inform the defense that body camera footage had been collected but was inadvertently deleted after the defense specifically requested such information does not change our analysis of prong three. Here, the State's failure to disclose information requested by the defense was a discovery violation, but it does not amount to a *Brady* violation because the audio and video evidence requested by the defense had not been preserved. For the State to commit a *Brady* violation, the evidence suppressed must have been collected and preserved. Evidence that has not been collected or preserved raises issues involving categories one and two but does not invoke *Brady* or an analysis under category three.

[¶24] Because prong three has not been satisfied, we need not decide whether a reasonable probability exists that the outcome of the proceedings would have been different had the evidence been disclosed.

[¶25] Kolstad's due process rights were not violated as a result of the prosecution's failure to provide the defense with evidence that was potentially within its purview. Under category two, the State did not in bad faith fail to preserve Nelson's or Waltz's body camera footage. And because the officers'

body camera footage was not preserved, the State did not suppress the body camera footage that had been collected under category three.

B

[¶26] The State argues dismissing the refusal charge because of the discovery violation was an abuse of discretion. District court decisions regarding discovery violations are reviewed under the abuse of discretion standard. *State v. Rolfson*, 2018 ND 51, ¶ 6, 907 N.W.2d 780 (citing *State v. Horn*, 2014 ND 230, ¶ 7, 857 N.W.2d 77; *State v. Loughead*, 2007 ND 16, ¶ 17, 726 N.W.2d 859). "A district court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, if its decision is not the product of a rational mental process leading to a reasoned determination, or if it misinterprets or misapplies the law." *Id.* (citing *State v. Myers*, 2017 ND 265, ¶ 6, 903 N.W.2d 520).

[¶27] Under N.D.R.Crim.P 16(a)(1)(D), the State is required to provide the defendant with body camera footage if it is within the State's possession, custody, or control and has been requested by the defense. The State is under a continuing duty to disclose discovery materials requested by the defense. N.D.R.Crim.P. 16(c). If a party fails to comply with a discovery request, the court may:

> (i) order that party to permit the discovery or inspection: specify its time, place and manner; and prescribe other just terms and conditions;
> (ii) grant a continuance;
> (iii) prohibit that party from introducing the undisclosed evidence;
> (iv) relieve the requesting party from making a disclosure required by this rule; or
> (v) enter any other order that is just under the circumstances.

N.D.R.Crim.P. 16(d)(2). Regarding discovery violations under Rule 16, we have stated:

> Rule 16 is not a constitutional mandate, but is an evidentiary discovery rule designed to further the interests of fairness. Noncompliance results in a constitutionally unfair trial

only where the barriers and safeguards are so relaxed or forgotten the proceeding is more of a spectacle or a trial by ordeal than a disciplined contest. If the error is not of constitutional magnitude, it is reversible only upon a showing that the defendant has been denied substantial rights. No substantial rights are affected when it is clear that the defendant was not significantly prejudiced by the discovery violation.

When apprised of a discovery violation, a trial court is authorized by Rule 16(d)(2), N.D.R.Crim.P., to use various remedies, but should impose the least severe sanction that will rectify the prejudice, if any, to the opposing party.

*State v. McNair*, 491 N.W.2d 397, 400 (N.D. 1992) (internal citations and quotations omitted). In civil cases, we have said that dismissal of an action for discovery violations is one of the most severe sanctions available to a court, and should only be imposed if the violation is deliberate or in bad faith. *See, e.g.*, *Lang v. Bank of North Dakota*, 530 N.W.2d 352, 355 (N.D. 1995); *Dakota Bank & Trust Co. of Fargo v. Brakke*, 377 N.W.2d 553, 556 (N.D. 1985). Accordingly, dismissal "should be used sparingly and only in extreme situations and should not be used if an alternative, less drastic sanction is available and just as effective." *Dakota Bank & Trust Co.*, at 556 (citing *Thompson v. Ziebarth*, 334 N.W.2d 192 (N.D.1983); *St. Aubbin v. Nelson*, 329 N.W.2d 874 (N.D.1983)).

[¶28] Though much of the discussion at trial surrounding dismissal of the refusal charge involved suppression of the refusal under *State v. Vigen*, 2019 ND 134, 927 N.W.2d 430, the district court clarified its statements from the first day of trial by stating it dismissed the refusal charge because of a discovery violation: "the ruling to dismiss the charge was based on discovery violations, Rule 16, not as a motion in limine to suppress." Because the alleged discovery violation here was not a violation of Kolstad's constitutional due process rights, the question becomes whether the violation significantly prejudiced Kolstad. In its discovery request, the defense requested any sound or video recordings taken of Kolstad that were subsequently "altered, edited, destroyed, or discarded." The State committed a discovery violation by failing to inform the defense that body camera footage had been collected but was inadvertently deleted due to technology problems. Kolstad was significantly

10

prejudiced by the violation because the deleted video footage may have proved or disproved Kolstad's defense that he could not perform the breath test because of his asthma and whether he was read the correct implied consent advisory. Therefore, we must decide whether the district court imposed the least severe sanction to rectify the prejudice Kolstad sustained as a result of the violation.

[¶29] Because there was no evidence of bad faith or a deliberate attempt to thwart the defense on behalf of the State, the district court should have considered an alternative, less severe sanction other than dismissal to remedy the discovery violation. At trial, the defense and the court both mentioned a continuance as a possible remedy for the discovery violation. However, the court did not inquire into whether a continuance or an alternative sanction was available or appropriate. Rather, the district court stated dismissal was appropriate because the case was in the midst of trial and because the defense did not have an opportunity to recover the deleted footage prior to trial.

[¶30] Being in the midst of trial was not alone a sufficient reason for the court to not consider a continuance or other less severe sanction. *See State v. Bonner*, 361 N.W.2d 605, 612 (N.D. 1985); *State v. Mbulu*, 2018 ND 73, ¶ 1, 908 N.W.2d 732 (per curiam); *see also City of Grand Forks v. Ramstad*, 2003 ND 41, ¶ 32, 658 N.W.2d 731 (Maring, J., concurring specially). Furthermore, the court did not inquire into whether the defense was reasonably likely to recover the deleted footage or the time it would take the defense to recover the footage if it could be recovered. Giving the defense an opportunity to obtain the deleted body camera footage may have rectified any prejudice sustained by the defense.

[¶31] After reviewing the entire record, there is nothing to indicate the district court adequately considered an alternative or less severe sanction to dismissal. The court resorted to the most severe sanction available to it. The court erred by not considering whether a continuance or other less severe sanction was appropriate.

11

## IV

[¶32] Because the district court abused its discretion by failing to consider an alternative, less severe sanction other than dismissing the refusal charge, the remaining issues raised on appeal are unnecessary to our decision, and we will not address them.

## V

[¶33] The district court's order dismissing the refusal charge is reversed, and we remand to the district court for further proceedings.

[¶34] Gerald W. VandeWalle
 Jon J. Jensen, C.J.
 Daniel J. Crothers
 Jerod E. Tufte
 Lisa Fair McEvers