Corrected Opinion Page 6 Filed 3/20/25 by Clerk of the Supreme Court

IN THE SUPREME COURT
STATE OF NORTH DAKOTA

2025 ND 46

State of North Dakota                               Plaintiff and Appellee

v.

Benjamin Isaiah Williams                        Defendant and Appellant

No. 20240203

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Cynthia M. Feland, Judge.

AFFIRMED.

Opinion of the Court by Crothers, Justice.

Julie A. Lawyer, State's Attorney (argued), and Dennis H. Ingold, Assistant State's Attorney (appeared), Bismarck, ND, for plaintiff and appellee.

Alexis L. Madlom (argued) and Stormy Vickers (on brief), Fargo, ND, for defendant and appellant.

**Crothers, Justice.**

[¶1]  Benjamin Williams appeals from the district court's criminal judgment after a jury found him guilty of murder and unlawful possession of a firearm. We affirm the district court's denial of Williams's motion to exclude new witness testimony not disclosed by the State prior to trial, and we reject his claim of prosecutorial misconduct. We decline to consider Williams's claim the State failed to produce a witness's personnel file because the issue was not preserved for review.

I

[¶2]  In October 2022 officers responded to a shooting in Bismarck, North Dakota. Christopher Sebastian was found dead in the driver's seat of a vehicle with multiple gunshot wounds to his head. On October 13, 2022, Williams was charged with murder and unlawful possession of a firearm. Evidence collected by law enforcement at or near the crime scene included a black sweatshirt, face mask, a black glove, jeans, a .40 caliber pistol, .40 caliber cartridges, and ammunition magazines. Williams's trial commenced on April 1, 2024. The district court heard testimony from multiple witnesses and experts, and after six days of trial the jury found Williams guilty of both charges. Williams was sentenced to life without parole on the murder conviction and five years to serve concurrently on the unlawful possession of a firearm conviction. Williams timely appealed.

II

[¶3] Williams claims the district court erred by failing to exclude new information from a State's witness when the information was known by the State prior to trial but not disclosed by the State in its initial discovery responses. Williams argues the State's failure to provide the new information it had about the witness's testimony constituted a *Brady* violation.

[¶4]   Under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), "suppression by the prosecution of evidence favorable to an accused violates due process where the evidence is material to guilt or punishment irrespective of the good faith or bad faith of the prosecution." *See also State v. Kolstad*, 2020 ND 97, ¶ 19, 942 N.W.2d 865. This Court's application of the *Brady* standard is well established:

> "In *Brady*, the United States Supreme Court held that suppression by the prosecution of evidence favorable to an accused violates due process if the evidence is material to guilt or punishment. To establish a *Brady* violation, the defendant must prove: (1) the government possessed evidence favorable to the defendant; (2) the defendant did not possess the evidence and could not have obtained it with reasonable diligence; (3) the prosecution suppressed the evidence; and (4) a reasonable probability exists that the outcome of the proceedings would have been different if the evidence had been disclosed."

*State v. Muhle*, 2007 ND 132, ¶ 25, 737 N.W.2d 647 (cleaned up).

[¶5]   To prevail on a *Brady* claim a defendant must satisfy all four prongs or factors of the legal test. *See, e.g., State v. Pederson*, 2024 ND 79, ¶ 13, 6 N.W.3d 619 (resolving *Brady* claim on defendant's failure to establish prong one). Here, the district court focused on prong two, which we determine is dispositive.

[¶6]   On October 5, 2022, the witness was interviewed by law enforcement and a report of the interview was provided to Williams. The witness's original statement did not include that he saw the shooting. The State re-interviewed the witness in preparation for trial. By asking questions during the pre-trial preparation that law enforcement did not ask in the original interview, the State learned the witness saw one of the gunshots "blew out some of the glass" in the victim's car. The State did not inform Williams of this new information, but during opening statements stated to the jury, "Well, you'll also hear from [a witness]. He was actually outside when the shooting happened. He heard one of the gunshots, and he turned and he saw another shot that blew out some of the glass in the white Hyundai."

2

[¶7] After the State's opening statement, Williams moved for an order prohibiting the State from eliciting testimony from the witness that was inconsistent with the officer's earlier disclosed report of the witness's testimony. Williams argued the State's failure to disclose the additional information prior to trial was a *Brady* violation because it could be used for impeachment. The district court denied Williams's motion to exclude the undisclosed information but offered to move the witness testimony to a later day during the trial to allow Williams more time to prepare. Williams rejected the court's offer.

[¶8] "The United States Supreme Court has held evidence that can be used to impeach a witness is subject to disclosure under *Brady.*" *Muhle,* 2007 ND 132, ¶ 27 (citing *Strickler v. Greene*, 527 U.S. 263, 280 (1999)); *see also Brady,* 373 U.S. at 86-87. The district court recognized potential impeachment evidence was involved but relied on our holding in *State v. Muhle* to deny Williams's motion. In *Muhle,* the defendant argued new statements made by a key witness just before trial were inconsistent with prior statements, and claimed he had "no way to anticipate this new evidence." *Muhle,* ¶ 26. We held that, despite the inconsistent statements, Muhle "had the opportunity to cross-examine [the witness] on any inconsistent statements for purposes of impeaching [the witness's] credibility before the jury." *Id.* ¶ 30. We also determined that Muhle knew the witness's identity and had the opportunity to meet and interview the witness but chose not to. *Id.* ¶ 29.

[¶9] Here, the State claimed the witness's testimony did not change; rather the new information was the result of the witness being asked questions that were not posed during the initial interview. The State further argued the new information obtained by the State could have been obtained through Williams's own interviews and due diligence. The district court agreed, similar to the court in *Muhle,* that Williams was aware of the identity of the witness and had an opportunity to send an investigator to meet with the witness but chose not to. Williams claims he had a limited budget to hire an investigator and did not have reason to believe it was necessary. The court rejected the argument and found Williams failed to establish a *Brady* violation because he could have obtained the

information with reasonable diligence. We agree and conclude the court did not err in finding no *Brady* violation occurred.

III

[¶10] Williams argues the State committed a *Brady* violation when it suppressed the employment records of Dr. Barrie Miller, who provided opinion testimony on behalf of the State.

[¶11] Dr. Miller was the State forensic examiner who conducted an autopsy on the victim, and testified and provided photographs and written exhibits relating to her findings. Through a discovery request in an unrelated case, but not provided in this case, Williams's counsel received a letter regarding Dr. Miller's employment suspension and subsequent termination.

[¶12] On February 13, 2024, Dr. Miller was placed on a performance improvement plan due to "a backlog of autopsy reports and low staff morale and productivity and professionalism." The trial in this matter commenced April 1, 2024. Dr. Miller was terminated from her position on April 10, 2024. The State did not disclose Dr. Miller's workplace deficiencies during discovery. After trial, Williams filed a motion for sanctions claiming the failure to disclose the information violated N.D.R.Crim.P. 16 and the *Brady* progeny of cases. The district court denied the motion for sanctions.

[¶13] In the district court, Williams argued as follows:

> "Mr. Williams does not seek a finding from this court that the State committed a *Brady* violation pursuant to *Syverston*, *Russell*, *Goulet* and similar cases. Mr. Williams seeks an Order sanctioning the State for failing to comply with Rule 16 and the *Brady* progeny of cases. Without some remedy (sanction), the State has no reason ever to comply with *Brady* in any instance other than when it is readily obvious that the violation would result in a dismissal or not guilty verdict. Any sanction, even one normally considered *de minimis*, serves two functions: 1) a written record is created which assists the court and future litigants in ensuring there is not systemic institutional violations, and 2) puts the State on notice that

4

violations, even those that do not result in a new trial or suppression of evidence, are still subject to remedy."

[¶14] On appeal, Williams argues the failure to disclose the performance improvement plan was a discovery and a *Brady* violation. Williams generally claims he is entitled to a new trial. Yet he acknowledges "[t]he suppression of the impeachment evidence related to Dr. Miller alone does not result in a different outcome to the proceedings." Rather, Williams now argues the combination of alleged errors "undermines confidence in the verdict."

[¶15] Williams plainly stated he did not ask the district court for a ruling on whether the State committed discovery or *Brady* violations, and instead simply was seeking a "sanction." Now, Williams has changed his position and argues that the State committed discovery and *Brady* violations, that those violations undermine the jury's verdict, and that he is entitled to a new trial.

[¶16] "When an issue is not raised in the trial court, even a constitutional issue, this Court will not address the issue on appeal unless the alleged error rises to the level of obvious error." *State v. Chatman*, 2015 ND 296, ¶ 26, 872 N.W.2d 595. Williams does not argue obvious error, and we need not address issues on appeal that fail to properly argue obvious error. *State v. Thomas*, 2020 ND 30, ¶ 15, 938 N.W.2d 897 (declining to address the argument when a party did not raise the issue to the trial court and failed to argue obvious error). Therefore, we decline to address the merits of whether a discovery or a *Brady* violation occurred in relation to the State not providing Williams with Dr. Barrie Miller's employment records.

IV

[¶17] Williams claims the State violated his right to due process of law and denied him a fair trial by making improper closing arguments about the contents of DNA evidence. He argues that he is entitled to a new trial because the State incorrectly argued Williams could have been a contributor of DNA to the minor profiles that were not able to be analyzed.

5

[¶18] "A de novo standard of review applies to whether facts rise to the level of a constitutional violation, including a claim that prosecutorial misconduct denied a defendant's due process right to a fair trial." *State v. Pena Garcia*, 2012 ND 11, ¶ 6, 812 N.W.2d 328. "We first determine whether the prosecutor's actions were misconduct and, if so, we then examine whether the misconduct had prejudicial effect." *State v. Lyman*, 2022 ND 160, ¶ 8, 978 N.W.2d 734 (cleaned up). "A curative jury instruction generally will remove prejudice caused by improper statements because the jury is presumed to follow a court's instruction." *Id.*

[¶19] Here, the State's closing argument included statements that Williams once had possession of the gun, that Williams was not a contributor of a major profile of DNA on the gun, that testing of several minor profiles were too small or too complex to be analyzed by the Bureau of Alcohol, Tobacco, Firearms, and Explosives forensic science laboratory, and that the victim, whose DNA was on the gun, did not kill himself due to the number of shots to the victim's head. Williams argues the State's closing "was clearly contradicted by the testimony of the State's witness . . . and was improper and prejudicial as no witness saw Mr. Williams shoot Mr. Sebastian and the State's ability to connect Mr. Williams to the gun itself was only after the crime had been committed."

[¶20] We agree with the State that its arguments to the jury were not misstatements of the facts, and instead were fair and reasonable comments on the evidence. The State did not argue during closing that Williams's DNA was on the gun. It also acknowledged that contributors to the minor profiles were unknown due to the inability to accurately test those samples. In the face of no DNA evidence, the State presented to the jury its theory of circumstantial evidence supporting the State's theory why Williams was guilty of the crimes. The State's explanation of its theory was not prosecutorial misconduct. We therefore conclude the State did not engage in prosecutorial misconduct and Williams was not denied due process of law.

6

[¶21] Having concluded the State did not engage in prosecutorial misconduct, we do not need to weigh the prejudicial effect of any misconduct, nor must we consider the effect of the district court's curative instruction.

V

[¶22] We affirm the district court's denial of Williams's motion to exclude new witness testimony not disclosed by the State prior to trial, and we reject his claim of prosecutorial misconduct. We decline to consider Williams's claim the State failed to produce a witness's personnel file because the issue was not preserved for review.

[¶23] Jon J. Jensen, C.J.
      Daniel J. Crothers
      Lisa Fair McEvers
      Jerod E. Tufte
      Gail Hagerty, S.J.

[¶24] The Honorable Gail Hagerty, S.J., sitting in place of Bahr, J., disqualified.